1  Michael Risher (CA SBN 191627)
   mrisher@aclunc.org
2  Linda Lye (CA SBN 215584)
   llye@aclunc.org
3  AMERICAN CIVIL LIBERTIES UNION
4  FOUNDATION OF NORTHERN CALIFORNIA, INC.
   39 Drumm Street
5  San Francisco, CA 94111
   Tel: (415) 621-2493
6  Fax: (415) 255-8437
7
   Attorneys for Plaintiff
8

9

10              UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF CALIFORNIA
11                SAN FRANCISCO DIVISION

12                                               **DMR**

13

14                                    **CV 13 3127**

15  AMERICAN CIVIL LIBERTIES UNION OF    ) Case No._____
    NORTHERN CALIFORNIA,                 )
16                                       )
                                         )
17              Plaintiff,               ) COMPLAINT FOR DECLARATORY
                                         ) AND INJUNCTIVE RELIEF
18       v.                              )
                                         )
19  DEPARTMENT OF JUSTICE,               )
                                         )
20              Defendant.               )
    _____)
21

22

23

24

25

26

27

28

# INTRODUCTION

1.     This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. §552, to enforce the public's right to information about the federal government's use of a surveillance tool that simulates a cell tower and tricks all wireless devices on the same network in the vicinity to communicate with the device. The device is commonly known as a stingray, but is more generically called an IMSI Catcher (in reference to the unique International Mobile Subscriber Identity number assigned to wireless devices). Stingrays engage in a form of dragnet surveillance. They send signals to and receive information from not only particular devices targeted by the government, but also devices belonging to innocent third parties. Stingrays can identify, among other things, the location of wireless devices.

2.     There has been longstanding, widespread media interest and public concern related to government tracking and surveillance of location information. More recently, revelations about the federal government's acquisition of telephone records and email metadata have heightened public interest in and concern about dragnet surveillance by the government, topics that are being hotly debated by members of Congress. *See, e.g.,* Dan Roberts, *Senators accuse government of using 'secret law' to collect Americans' data,* The Guardian, June 28, 2013; Glenn Greenwald and Spencer Ackerman, *NSA collected US email records in bulk for more than two years under Obama,* The Guardian, June 27, 2013; Glenn Greenwald, *NSA collecting phone records of millions of Verizon customers daily*, The Guardian, June 5, 2013. There is thus great urgency to inform the public about any and all forms of dragnet electronic surveillance by the government. Access to this information is necessary for a meaningful and informed public debate over these pressing public policy issues and pending legislative debates.

3.     Over two months ago, on April 11, 2013, Plaintiff American Civil Liberties Union of Northern California, a non-profit civil rights and civil liberties organization submitted a FOIA request to Defendant Department of Justice ("DOJ") seeking information about the federal government's use of stingrays. Plaintiff also requested expedited processing, pursuant to 5 U.S.C. §522(a)(6)(E), on the grounds that this is "a matter of widespread and exceptional media

1

interest in which there exists possible questions about the government's integrity which affect public confidence." 28 C.F.R. §16.5(d)(1)(iv). Acknowledging the import and urgency of this request, the DOJ granted Plaintiff's request for expedited processing by letter dated May 30, 2013. Since that time, however, the agency has provided Plaintiff with *no* records or any information regarding the status of its search.

4.     Plaintiff now brings this action to obtain the information and the expedited processing to which it is statutorily entitled.

## PARTIES

5.     Plaintiff American Civil Liberties Union of Northern California ("ACLU-NC") is an affiliate of the American Civil Liberties Union, a national, non-profit, non-partisan organization with the mission of protecting civil liberties from government incursions, safeguarding basic constitutional rights, and advocating for open government. The ACLU-NC is established under the laws of the state of California and is headquartered in San Francisco, California. The ACLU-NC has over 40,000 members. In support of its mission, the ACLU-NC uses its communications department to disseminate to the public information relating to its mission, through its website, newsletters, and other publications.

6.     Defendant Department of Justice is an agency within the meaning of 5 U.S.C. §552(f). The agency has its headquarters in Washington, D.C., and field offices all over the country, including San Francisco, California.

## JURISDICTION

7.     This Court has subject matter jurisdiction and personal jurisdiction over the parties pursuant to 5 U.S.C. §§552(a)(4)(B) and 552(a)(6)(C)(i). This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and 1346.

## VENUE AND INTRADISTRICT ASSIGNMENT

8.     Venue is proper in this district pursuant to 5 U.S.C. §552(a)(4)(B) and 28 U.S.C. §§1391(e) and §1402. The plaintiff has its principal place of business in this district.

9.      Pursuant to Local Rule 3-2(c) and (d), assignment to the San Francisco division is proper because a substantial portion of the events giving rise to this action occurred in this district and division and because Plaintiff is headquartered in San Francisco.

## FACTUAL ALLEGATIONS

### The Federal Government's Use of Stingray Devices Is a Matter of Significant Public Interest

10.      Stingrays are highly intrusive and indiscriminate.  To locate a suspect's cell phone, stingrays obtain information from all devices on the same network in a given area and send signals into the homes, bags, or pockets of the suspect and third parties alike.  This type of device can also capture the content of communications, not merely the location of the device.  Their use implicates the privacy interests of the suspect targeted in any stingray search, as well as untold numbers of third parties as to whom there is no probable cause.

11.      Judicial supervision is particularly important with evolving technology, where there is a heightened risk of overly intrusive searches.  *See United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1176 (9th Cir. 2010) (en banc).  The Fourth Amendment assigns judicial officers a critical role in ensuring that all aspects of a search are supported by probable cause and are not overly intrusive.  *See United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986).  The government's omission of material information in a warrant application prevents the court from exercising this constitutional function.  *See United States v. Rettig*, 589 F.2d 418, 422-23 (9th Cir. 1979).

12.      Stingrays are a potent illustration of why the government, in seeking court authorization to use forms of surveillance technology with which courts are unfamiliar, must present basic information to the courts about what the technology is and how it works.  Without that information, the court is not in a position to assess the constitutional implications of the government's request for authorization to use the technology.

13.      At the end of March 2013, Plaintiff ACLU-NC obtained an email dated May 23, 2011 from the United States Attorney's Office for the Northern District of California in response to a separate FOIA request.  The email strongly suggests that the federal government has not

3

1 been candid with courts when seeking authorization to use stingrays. A copy of the May 23,

2 2011 email is appended hereto as Exhibit 1.

3         14.     The email indicated that federal magistrate judges in the Northern District of

4 California had "collective concerns" about the government's use of stingrays, in connection with

5 applications to use pen register devices. The email indicated that the federal government had not

6 been "explicit" in its applications to federal judges when seeking permission to use stingray

7 devices. This revelation received extensive media attention. *See, e.g.,* Jennifer Valentino-

8 Devries, *Judges Questioned Use of Cellphone Tracking Devices,* Wall Street Journal by Jennifer

9 DeVries, March 27, 2013; Ellen Nakashima, *Little-known surveillance tool raises concerns by*

10 *judges, privacy activists,* Washington Post, March 27, 2013; Rory Carroll, *ACLU challenges*

11 *'stingray surveillance' that allows police to track cellphones,* The Guardian, March 28, 2013;

12 Shaun Waterman, *Can you hear me now? Feds admit FBI warrantless cellphone tracking 'very*

13 *common',* Washington Times, March 29, 2013; Kim Zetter, *Government Fights for Use of Spy*

14 *Tool That Spoofs Cell Towers,* Wired, March 29, 2013; J.D. Tuccille, *Feds Routinely Track Cell*

15 *Phones Without Telling Judges,* Reason.com, March 27, 2013; Declan McCullagh, *FBI prepares*

16 *to defend 'Stingray'[ cell phone tracking,* CNET News, March 27, 2013; Kevin Gosztola,

17 Dissenter, *DOJ Hid Routine Use of 'Stingray' Surveillance Technology from Federal Magistrate*

18 *Judges,* March 27, 2013; Cyrus Farivar, *New e-mails reveal Feds not "forthright" about fake*

19 *cell tower devices,* Ars Technica, March 27, 2013; Jacob Kastrenakes, *Federal agents used*

20 *Stingray phone location tracker without informing judges,* The Verge.com, March 27, 2013; Josh

21 Peterson, *DOJ emails show feds kept judges in the dark about cellphone tracking device,* The

22 Daily Caller, March 28, 2013; *ACLU: Feds secretly using highly invasive spying tool.*

23 Kennebec Journal/The Washington Post, March 28, 2013; Emmanual Dunand, *FBI being sued*

24 *over powerful Stingray cellphone tracking system,* RT USA, March 28, 2013; *Daniel David*

25 *Rigmaiden Case Reveals Stingray Cell Phone Tracker's Covert Use,* Huffington Post, March 28,

26 2013; Ryan Gallagher, *Feds Accused of Hiding Information From Judges About Covert*

27 *Cellphone Tracking Tool,* Slate.com by Ryan Gallagher, March 28, 2013; Stephen C. Webster,

28

4

*ACLU: Email reveals feds misled judges to abuse wiretapping powers,* The Raw Story, March 28, 2013; *Surveillance technology comes under fire,* United Press International, Inc., March 28, 2013; *ACLU backs suppression of 'stingray' evidence sought by hacker,* Gantdaily.com by AHN, March 28, 2013; Danielle Walker, *Federal judge to weigh in on FBI's "stingray" cell phone surveillance,* SC Magazine, March 29, 2013; Lain Thomson *FBI on trial for warrantless Stingray mobile spying - Cellphone spying made easy - and sloppy - by electronic signal slurper,* The Register, March 29, 2013; *Feds admit FBI warrantless cellphone tracking 'very common.'* Press TV, March 30, 2013; Jack Taylor, *FBI hid the use of 'Stingray' spying technology from federal judges,* VR-Zone.com, March 31, 2013; Vanessa Blum, *Emails Detail Northern District's Use of Controversial Surveillance,* The Recorder, April 1, 2013; Rebecca Bowe, *Fed's use of spy tools under scrutiny due to privacy concerns,* San Francisco Bay Guardian, April 3, 2013.

15.    This extensive news coverage reflects the widespread and exceptional media interest in the government's use of stingrays and whether the government has been forthcoming with the courts in seeking court authorization to use this device. Plaintiff's FOIA request would shed light on these issues.

**Plaintiff Submitted A FOIA Request and DOJ Granted Expedited Processing But Has Failed to Produce Any Records**

16.    On April 13, 2012, Plaintiff submitted a FOIA request to the DOJ seeking information about its use of stingray devices. A copy of Plaintiff's FOIA request is appended hereto as Exhibit 2.

17.    In particular, Plaintiff's FOIA request seeks:

1)    Policies, procedures, practices, legal opinions, memoranda, briefs, correspondence (including e-mails) and training materials, template applications, template affidavits in support of applications, template proposed court orders or warrants, and any other document referencing or relating to IMSI catchers.

5

2) Policies, procedures, practices, legal opinions, memoranda, briefs, correspondence (including emails), training materials, and any other document referencing or relating to the Wireless Intercept and Tracking Team of the Federal Bureau of Investigation.

3) All documents relating to the disclosure to the public and media coverage of the May 23, 2011 email attached to [Plaintiff's FOIA request and attached to this complaint as Exhibit 1].

18. Plaintiff also requested expedited processing, pursuant to 5 U.S.C. §522(a)(6)(E), on the ground that this is "a matter of widespread and exceptional media interest in which there exists possible questions about the government's integrity which affect public confidence." 28 C.F.R. §16.5(d)(1) (iv).

19. By letter dated April 25, 2013, DOJ acknowledged receipt of Plaintiff's FOIA request. A copy of this letter is appended hereto as Exhibit 3.

20. By letter dated May 30, 2013, DOJ granted Plaintiff's request for expedited processing. A copy of this letter is appended hereto as Exhibit 4.

21. More than 20 working days have passed since the DOJ received Plaintiff's FOIA request.

22. As of the date of the filing of this complaint, Plaintiff has not received any responsive documents from the DOJ or any correspondence indicating when the DOJ might provide any documents.

23. Plaintiff has exhausted all applicable administrative remedies.

24. DOJ has wrongfully withheld the requested records from Plaintiff.

//
//
//
//
//

6

## FIRST CLAIM FOR RELIEF
### <u>Violation of Freedom of Information Act For</u>
### <u>Wrongful Withholding Of Agency Records</u>

25.    Plaintiff incorporates the above paragraphs as if fully set forth herein.

26.    Defendant DOJ has wrongfully withheld agency records requested by Plaintiff under FOIA and has failed to comply with the statutory time for the processing of FOIA requests.

27.    Plaintiff has exhausted the applicable administrative remedies with respect to DOJ's wrongful withholding of the requested records.

28.    Plaintiff is entitled to injunctive relief with respect to the release and disclosure of the requested documents because Defendant DOJ continues to improperly withhold agency records in violation of FOIA. Plaintiff will suffer irreparable injury from, and has no adequate legal remedy for, the DOJ's illegal withholding of government documents pertaining to the subject of Plaintiff's FOIA request.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

A.    Order Defendant DOJ to process immediately the requested records in their entirety;

B.    Order Defendant DOJ to make the requested records in their entirety available to Plaintiff promptly upon completion of its processing of such records;

C.    Provide for expeditious proceedings in this action;

D.    Enter a preliminary and permanent injunction against the DOJ ordering the relief requested herein;

E.    Declare that DOJ's failure to disclose the records requested by Plaintiff is unlawful;

F.    Award Plaintiff its litigation costs and reasonable attorney's fees incurred in this action;

//

G.    Grant such other relief as the Court may deem just and proper.

Dated: July 8, 2013                    By: _____
                                           Linda Lye


Michael Risher
Linda Lye
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Tel: (415) 621-2493
Fax: (415) 255-8437

Attorneys for Plaintiff

8

# Exhibit 1

**Kenney, Patricia (USACAN)**

| | |
|---|---|
| From: | Waldinger, Kyle (USACAN) |
| Sent: | Monday, May 23, 2011 12:48 PM |
| To: | Beausey, Karen (USAMA); USACAN-Attorneys-Narcotics |
| Subject: | RE: IMPORTANT INFORMATION RE: PEN REGISTERS |

And just to be super clear, the agents may not use the term "WIT" (or "WITT") but rather may be using the term "Triggerfish" or the term "Stingray," so please make sure that the agents know what you are referring to.

**From:** Beausey, Karen (USACAN)
**Sent:** Monday, May 23, 2011 12:17 PM
**To:** USACAN-Attorneys-Narcotics
**Subject:** FW: IMPORTANT INFORMATION RE: PEN REGISTERS
**Importance:** High

Hi everyone. Miranda asks 4 questions, but I think we need an answer to a 5th one as well: whether or not the initial intended purpose of the pen register was to use the WIT technology to locate someone, did the agents eventually use the pen in that way? In other words, a pen might have started out as just a pen, and later the agents decided to use the order to also attempt to locate the target. They may or may not have told you about this decision. So, check in with your agents and find out whether they have been using pen register orders to locate targets with the WIT boxes, whether or not they started out intending to do so.

Thanks.


Karen

**From:** Kane, Miranda (USACAN)
**Sent:** Monday, May 23, 2011 11:55 AM
**To:** USACAN-Attorneys-Criminal
**Subject:** IMPORTANT INFORMATION RE: PEN REGISTERS
**Importance:** High

**Effective immediately all pen register applications and proposed orders must be reviewed by your line supervisor before they are submitted to a magistrate judge.**

As some of you may be aware, our office has been working closely with the magistrate judges in an effort to address their collective concerns regarding whether a pen register is sufficient to authorize the use of law enforcement's WIT technology ( a box that simulates a cell tower and can be placed inside a van to help pinpoint an individual's location with some specificity) to locate an individual. It has recently come to my attention that many agents are still using WIT technology in the field although the pen register application does not make that explicit.

While we continue work on a long term fix for this problem it is important that we are consistent and forthright in our pen register requests to the magistrates which is why I am

1

adding this additional review. I anticipate that I will be able to eliminate the line supervisor approval requirement once we have an opportunity to discuss the issue with the bench and revise the language in our common application. In the meantime, I appreciate your cooperation in this matter.

In addition, if you have requested a pen register in the last six months – since January 2011 – please provide the following information to your supervisor as soon as possible: 1) Was the pen register approved by a magistrate? 2) Which magistrate reviewed it? 3) Was the purpose of the pen register to locate a person? 4) Did the agency requesting the pen register use WIT technology? This information will be extremely valuable to me in my discussions with the magistrate judges.

Again, thank you in advance for your assistance. I will update everyone about the status of this issue at our Criminal Division Meeting on June 7, 2011.

Miranda

# Exhibit 2



April 11, 2013

*Via facsimile and United States mail*

Chief, FOIA/PA Unit
Criminal Division
Department of Justice
Suite 1127, Keeney Building
Washington, DC 20530-0001
FAX: 202 514 6117

FOIA/Privacy Staff
Executive Office for United States Attorneys
Department of Justice
Room 7300, 6000 E Street, NW
Washington, DC 20530-0001
FAX: 202 616 6478

Re:     Freedom of Information Act Request
        *Expedited Processing Requested*

Dear FOIA Officer,

The American Civil Liberties Union of Northern California (ACLU-NC) submits this expedited Freedom of Information Act (FOIA) request for records in the possession of the Criminal Division and the Executive Office for United States Attorneys pertaining to the federal government's use of mobile tracking technology commonly known as a StingRay but more generically known as an International Mobile Subscriber Identity or IMSI Catcher. The ACLU-NC submits this request pursuant to the FOIA, 5 U.S.C. § 552, and implementing regulations 28 CFR §16.1 *et seq.*

At the end of March 2013, requester ACLU-NC obtained an email dated May 23, 2011 from the United States Attorney's Office for the Northern District of California in response to a separate FOIA request. A copy of the May 23, 2011 email is attached to this letter. The email indicated that federal magistrate judges in the Northern District of California had "collective concerns" about the government's use of IMSI Catchers, also called stingray devices, in connection with applications to use pen register devices. The email indicated that the federal government had not been "explicit" in its applications to federal judges when seeking permission to use the stingray device. This revelation received widespread media attention, with coverage in major national and international newspapers such as the Wall Street Journal, Washington Post and the British newspaper The Guardian. *See, e.g.,* Jennifer Valentino-Devries, *Judges Questioned Use of Cellphone Tracking Devices,* Wall Street Journal by Jennifer DeVries, March 27, 2013; Ellen Nakashima, *Little-known surveillance tool raises concerns by judges, privacy activists,* Washington Post, March 27, 2013; Rory Carroll, *ACLU challenges 'stingray surveillance' that allows police to track cellphones,* The Guardian, March 28, 2013; Shaun Waterman, *Can you hear me now? Feds admit FBI warrantless cellphone tracking 'very common',* Washington Times, March 29, 2013; Kim Zetter, *Government Fights for Use of Spy*

MICHELLE A. WELSH, *CHAIRPERSON* | DENNIS MCNALLY, AJAY KRISHNAN, FARAH BRELVI, ALLEN ASCH, *VICE CHAIRPERSONS* | KENNETH J. SUGARMAN, *SECRETARY/TREASURER*
ABDI SOLTANI, *EXECUTIVE DIRECTOR* | CHERI BRYANT, *DEVELOPMENT DIRECTOR* | SHAYNA GELENDER, *ORGANIZING & COMMUNITY ENGAGEMENT DIRECTOR* | REBECCA FARMER, *COMMUNICATIONS DIRECTOR*
ALAN SCHLOSSER, *LEGAL DIRECTOR* | MARGARET C. CROSBY, ELIZABETH GILL, LINDA LYE, JULIA HARUMI MASS, LINNEA NELSON, MICHAEL RISHER, JORY STEELE, *STAFF ATTORNEYS*
PHYLLIDA BURLINGAME, ALLEN HOPPER, NATASHA MINSKER, NICOLE A. OZER, *POLICY DIRECTORS* | STEPHEN V. BOMSE, *GENERAL COUNSEL*

AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA
39 DRUMM STREET, SAN FRANCISCO, CA 94111 | T/415.621.2493 | F/415.255.1478 | TTY/415.863.7832 | WWW.ACLUNC.ORG



*Tool That Spoofs Cell Towers,* Wired, March 29, 2013; J.D. Tuccille, *Feds Routinely Track Cell Phones Without Telling Judges,* Reason.com, March 27, 2013; Declan McCullagh, *FBI prepares to defend 'Stingray'[ cell phone tracking,* CNET News, March 27, 2013; Kevin Gosztola, Dissenter, *DOJ Hid Routine Use of 'Stingray' Surveillance Technology from Federal Magistrate Judges,* March 27, 2013; Cyrus Farivar, *New e-mails reveal Feds not "forthright" about fake cell tower devices,* Ars Technica, March 27, 2013; Jacob Kastrenakes, *Federal agents used Stingray phone location tracker without informing judges,* The Verge.com, March 27, 2013; Josh Peterson, *DOJ emails show feds kept judges in the dark about cellphone tracking device,* The Daily Caller, March 28, 2013; *ACLU: Feds secretly using highly invasive spying tool.* Kennebec Journal/The Washington Post, March 28, 2013; Emmanual Dunand, *FBI being sued over powerful Stingray cellphone tracking system,* RT USA, March 28, 2013; *Daniel David Rigmaiden Case Reveals Stingray Cell Phone Tracker's Covert Use,* Huffington Post, March 28, 2013; Ryan Gallagher, *Feds Accused of Hiding Information From Judges About Covert Cellphone Tracking Tool,* Slate.com by Ryan Gallagher, March 28, 2013; Stephen C. Webster, *ACLU: Email reveals feds misled judges to abuse wiretapping powers,* The Raw Story, March 28, 2013; *Surveillance technology comes under fire,* United Press International, Inc., March 28, 2013; *ACLU backs suppression of 'stingray' evidence sought by hacker,* Gantdaily.com by AHN, March 28, 2013; Danielle Walker, *Federal judge to weigh in on FBI's "stingray" cell phone surveillance,* SC Magazine, March 29, 2013; Lain Thomson *FBI on trial for warrantless Stingray mobile spying - Cellphone spying made easy - and sloppy - by electronic signal slurper,* The Register, March 29, 2013; *Feds admit FBI warrantless cellphone tracking 'very common.'* Press TV, March 30, 2013; Jack Taylor, *FBI hid the use of 'Stingray' spying technology from federal judges,* VR-Zone.com, March 31, 2013; Vanessa Blum, *Emails Detail Northern District's Use of Controversial Surveillance,* The Recorder, April 1, 2013; Rebecca Bowe, *Fed's use of spy tools under scrutiny due to privacy concerns,* San Francisco Bay Guardian, April 3, 2013.

## I.     REQUEST FOR INFORMATION

We request disclosure of the following records maintained by your agency relating to IMSI catchers.  The term IMSI catcher means technology that simulates a cell tower and thus triggers an automatic response from wireless devices on a particular cellular network in the range of the device.  An IMSI catcher is also referred to as a cell site simulator or digital analyzer.  The device also has the following Harris Corporation product names: TriggerFish, Stingray, Stingray II, AmberJack, HailStorm, Kingfish, Loggerhead; the following Martone Radio Technology product names: the Max-G, Max-W, Spartacus, Spartacus-II products; and the following Cellxion product names: Optima, Quadra, UGX-300, GX-200, GX-Duo and GX-Solo.

We seek the following records:

1) Policies, procedures, practices, legal opinions, memoranda, briefs, correspondence (including e-mails) and training materials, template applications, template affidavits

in support of applications, template proposed court orders or warrants, and any other document referencing or relating to IMSI catchers.

2) Policies, procedures, practices, legal opinions, memoranda, briefs, correspondence (including emails), training materials, and any other document referencing or relating to the Wireless Intercept and Tracking Team of the Federal Bureau of Investigation.

3) All documents relating to the disclosure to the public and media coverage of the May 23, 2011 email attached to this letter.

Category 1 above includes but is not limited to documents identified in response to the August 1, 2011 request of Christopher Soghoian (Request No. 12-3200-R), in which the Criminal Division by letter dated January 25, 2013 identified and withheld in full 97 pages of material.

Please note that requester has previously submitted an April 13, 2012 request for location tracking records. The request has been assigned File number CRM-201300207F by the Criminal Division and 12-1293 by the Executive Office for United States Attorneys, and is the subject of a pending lawsuit in the Northern District of California. *See American Civil Liberties Union of Northern California et al. v. Department of Justice*, N.D. Cal. Case No. 3:12-cv-04008-MEJ. Requester does not seek in response to this FOIA request records that have already been identified and are being processed in connection with the April 13, 2012 FOIA request.

With respect to our request to the EOUSA, we request that you search the following EOUSA offices: Director, Principal Deputy and Chief of Staff, Legal and Victim Programs and the Deputy Director overseeing that Office, Communications and Law Enforcement Coordination and the Deputy Director overseeing that Office, General Counsel and the Deputy Director overseeing that Office, Legal Education and the Deputy Director overseeing that Office.[1] In addition, we request that you search the United States Attorney's Office for the District of Columbia and the United States Attorneys' Offices in the following states: Alaska, Arizona, California, Florida, Maryland, Texas, Virginia, Washington, Wisconsin.

## II.    REQUEST FOR EXPEDITED PROCESSING

We seek expedited processing. This request should be granted because there is widespread media interest in the government's use of this surveillance technology and in particular, whether the government has sought the appropriate level of court approval in using this technology and whether the government has been candid with the courts in its applications to use this technology.

---

[1] In formulating this list, we relied on the staff descriptions available at http://www.justice.gov/jmd/mps/manual/orgcharts/eousa.pdf.

Title 5 U.S.C. §552(a)(6)(E) provides for expedited processing of requests for information in cases in which the person requesting the records demonstrates a compelling need. Department of Justice regulations state that FOIA requests are entitled to expedited processing when information requested involves "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 28 CFR §16.5(d)(1)(iv).

Expedited processing is warranted here. As demonstrated by the news coverage cited above, there is widespread and exceptional media interest in the government's use of stingray devices. In addition, the government's use of this device raises possible questions about the government's integrity which affect public confidence. In particular, there is a question whether the government has fulfilled its duty of candor to the courts in seeking court authorization to use this device, or whether it has been less than forthcoming about its intended use of this technology and how the technology works. Expedited processing should therefore be granted pursuant to 28 CFR §16.5(d)(1)(iv).

### III.   REQUEST FOR WAIVER OF PROCESSING FEES

We request a waiver of processing fees because disclosure of the information sought in this request "is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." *See* 5 U.S.C. §552(a)(4)(A)(iii). In a recent request by requester ACLU-NC, the FBI granted the fee waiver. *See* FOPIA Request No. 1144839-000.

The records requested are not sought for commercial use. The ACLU-NC, a 501(c)(3) organization, is a "non-profit, non-partisan, public interest organization." *Judicial Watch, Inc. v. Rossotti,* 326 F.3d 1309, 1310 (D.C. Cir. 2003). Any information disclosed by the ACLU-NC as a result of this FOIA will be available to the public at no cost.

The records sought will also contribute to the public understanding of the operations or activities of the government, and in particular, the role of the FCC in allowing law enforcement agencies to use IMSI catchers -- a device that convinces wireless devices to connect with the IMSI catcher instead of the cellular carrier's base station -- while prohibiting the use of cell phone jammers. The widespread media interest in the government's use of this particular surveillance technology (*see* news articles cited above) demonstrates the enormous public interest in this device. There is a strong public interest in shedding light on the FCC's role in authorizing the use of this device by law enforcement agencies, notwithstanding its impact on the communications network.

In addition, the ACLU-NC is a representative of the news media and so charges at most should be limited to document duplication with search fees waived. *See* 5 U.S.C.

§552(a)(4)(A)(ii). The ACLU "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." *Id.* The ACLU-NC frequently garners extensive media coverage for the documents it obtains through FOIA requests. For example, the ACLU-NC authored a blog post about the May 23, 2011 email (discussed above) pertaining to IMSI catchers and obtained from the Department of Justice at the end of March 2012 through a FOIA request. *See* http://www.aclu.org/blog/national-security-technology-and-liberty/doj-emails-show-feds-were-less-explicit-judges-cell. The ACLU then distributed this blog post to journalists, resulting in the extensive media coverage in national and international newspapers cited above. In the first two days after publication on March 27, 2013, the blog post was viewed some 2,300 times. From publication to today's date, the blog post has been viewed over 3,400 times. In addition, the ACLU-NC publishes newsletters, news briefings, right to know materials, and other materials that are disseminated to the public. Its material is widely available to everyone, including tax-exempt organizations, not-for-profit groups, law students and faculty, for no cost or for a nominal fee. The ACLU-NC's communications department also disseminates information through the website http://www.aclunc.org, which had 252,654 visitors in 2012. This website addresses civil liberties issues in depth and provides features on civil liberties issues on which the ACLU-NC is focused. ACLU-NC staff persons are frequent spokespersons in television and print media and make frequent public presentations at meetings and events. Further, the ACLU-NC's communications department disseminates information through newsletters which are distributed to subscribers by mail. Due to these extensive publication activities, the ACLU-NC is a "representative of the news media" under the FOIA.[2]

If the fee waivers are denied, the requesters are prepared to pay fees up to $200 and request to be informed of further fees that may be charged, but reserve the right to appeal a denial of fee waivers.

\* \* \*

We look forward to the determination of this request for expedited processing within 10 calendar days and the determination of this request for documents within 20 days. *See* 28 CFR §16.5(d)(4); 5 U.S.C. §552(a)(6)(A)(i).

If this request for information is denied in whole or in part, we ask that you justify all deletions by reference to specific provisions of the Freedom of Information Act. We expect you to release all segregable portions of otherwise exempt material. We reserve the right to appeal a decision to withhold any information or deny a waiver of fees.

Thank you for your prompt attention to this matter. Please furnish all applicable records to Linda Lye, American Civil Liberties Union of Northern California, 39 Drumm Street, San Francisco, California, 94111, telephone 415 621 2493.

---

[2] Courts have found that organizations with missions similar to that of the ACLU and that engage in similar information dissemination activities are "primarily engaged in disseminating information." *See, e.g., Leadership Conference on Civil Rights v. Gonzales,* 404 F.Supp.2d 246, 260 (D.D.C. 2005).

I affirm that the information provided supporting the request for expedited processing and the fee waiver is true and correct to the best of my knowledge and belief.

Sincerely,

Linda Lye
Staff Attorney

| | |
|---|---|
| **From:** | Waldinger, Kyle (USACAN) |
| **Sent:** | Monday, May 23, 2011 12:48 PM |
| **To:** | Beausey, Karen (USAMA); USACAN-Attorneys-Narcotics |
| **Subject:** | RE: IMPORTANT INFORMATION RE: PEN REGISTERS |

And just to be super clear, the agents may not use the term "WIT" (or "WITT") but rather may be using the term "Triggerfish" or the term "Stingray," so please make sure that the agents know what you are referring to.

**From:** Beausey, Karen (USACAN)
**Sent:** Monday, May 23, 2011 12:17 PM
**To:** USACAN-Attorneys-Narcotics
**Subject:** FW: IMPORTANT INFORMATION RE: PEN REGISTERS
**Importance:** High

HI everyone.  Miranda asks 4 questions, but I think we need an answer to a 5th one as well:  whether or not the initial intended purpose of the pen register was to use the WIT technology to locate someone, did the agents eventually use the pen in that way?  In other words, a pen might have started out as just a pen, and later the agents decided to use the order to also attempt to locate the target.  They may or may not have told you about this decision.  So, check in with your agents and find out whether they have been using pen register orders to locate targets with the WIT boxes, whether or not they started out intending to do so.

Thanks.


Karen

**From:** Kane, Miranda (USACAN)
**Sent:** Monday, May 23, 2011 11:55 AM
**To:** USACAN-Attorneys-Criminal
**Subject:** IMPORTANT INFORMATION RE: PEN REGISTERS
**Importance:** High

**Effective immediately all pen register applications and proposed orders must be reviewed by your line supervisor before they are submitted to a magistrate judge.**

As some of you may be aware, our office has been working closely with the magistrate judges in an effort to address their collective concerns regarding whether a pen register is sufficient to authorize the use of law enforcement's WIT technology ( a box that simulates a cell tower and can be placed inside a van to help pinpoint an individual's location with some specificity) to locate an individual.  It has recently come to my attention that many agents are still using WIT technology in the field although the pen register application does not make that explicit.

While we continue work on a long term fix for this problem it is important that we are consistent and forthright in our pen register requests to the magistrates which is why I am

adding this additional review. I anticipate that I will be able to eliminate the line supervisor approval requirement once we have an opportunity to discuss the issue with the bench and revise the language in our common application. In the meantime, I appreciate your cooperation in this matter.

In addition, if you have requested a pen register in the last six months – since January 2011 - please provide the following information to your supervisor as soon as possible: 1) Was the pen register approved by a magistrate? 2) Which magistrate reviewed it? 3) Was the purpose of the pen register to locate a person? 4) Did the agency requesting the pen register use WIT technology? This information will be extremely valuable to me in my discussions with the magistrate judges.

Again, thank you in advance for your assistance. I will update everyone about the status of this issue at our Criminal Division Meeting on June 7, 2011.

Miranda

# ACLU

FOUNDATION OF
NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
415-621-2493

PRIVILEGED AND CONFIDENTIAL -- All information transmitted hereby is intended only for the use of the addressee(s) named below. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient(s), please note that any distribution or copying of this communication is strictly prohibited. Anyone who receives this communication in error should notify us immediately by telephone and return the original message to us via the U.S. Mail.

# *FAX COVER SHEET*

DATE:   April 11, 2013

Chief, FOIA/PA Unit          FOIA/Privacy Staff
Criminal Division            Executive Office for the US Attorneys
Department of Justice        Department of Justice

Fax: (202) 514-6117          Fax: (202) 616-6478   252-6047

FROM:   Linda Lye, Staff Attorney
        Fax: (415) 255-1478

PAGES:  9 (including cover)

RE:     Freedom of Information Act Request
        *Expedited Processing Requested*

MESSAGE:  Hard copy letter to follow

For transmission problems call Angela Galdamez at 415-621-2493, Ext. 329

```
┌─────────────────────────────────────┐
│  TRANSMISSION VERIFICATION REPORT    │
└─────────────────────────────────────┘

                              TIME  : 04/11/2013 13:12
                              NAME  :
                              FAX   :
                              TEL   :
                              SER.# : BROL0J230693

        DATE,TIME          04/11  13:10
        FAX NO./NAME       12022526047
        DURATION           00:01:41
        PAGE(S)            09
        RESULT             OK
        MODE               STANDARD
                           ECM
```

# ACLU

FOUNDATION OF
NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
415-621-2493

PRIVILEGED AND CONFIDENTIAL -- All information transmitted hereby is intended only for the use of the addressee(s) named below. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient(s), please note that any distribution or copying of this communication is strictly prohibited. Anyone who receives this communication in error should notify us immediately by telephone and return the original message to us via the U.S. Mail.

## *FAX COVER SHEET*

DATE:   April 11, 2013

Chief, FOIA/PA Unit           FOIA/Privacy Staff
Criminal Division             Executive Office for the US Attorneys
Department of Justice         Department of Justice

Fax: (202) 514-6117           Fax: (202) 616-6478  252-6047

FROM:   Linda Lye, Staff Attorney
        Fax: (415) 255-1478

PAGES:  9 (including cover)

```
                    ┌─────────────────────────────────────┐
                    │  TRANSMISSION VERIFICATION REPORT    │
                    └─────────────────────────────────────┘

                                        TIME  : 04/11/2013 12:57
                                        NAME  :
                                        FAX   :
                                        TEL   :
                                        SER.# : BROL0J230693


      ┌──────────────────────────────────────────────────────────────┐
      │  DATE,TIME              04/11  12:55                           │
      │  FAX NO./NAME           12025146117                            │
      │  DURATION               00:01:35                               │
      │  PAGE(S)                09                                     │
      │  RESULT                 OK                                     │
      │  MODE                   STANDARD                               │
      │                         ECM                                   │
      └──────────────────────────────────────────────────────────────┘
```

# ACLU

FOUNDATION OF
NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
415-621-2493

PRIVILEGED AND CONFIDENTIAL -- All information transmitted hereby is intended only for the use of the addressee(s) named below. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient(s), please note that any distribution or copying of this communication is strictly prohibited. Anyone who receives this communication in error should notify us immediately by telephone and return the original message to us via the U.S. Mail.

## *FAX COVER SHEET*

DATE:    April 11, 2013

Chief, FOIA/PA Unit            FOIA/Privacy Staff
Criminal Division              Executive Office for the US Attorneys
Department of Justice          Department of Justice

Fax: (202) 514-6117            Fax: (202) 616-6478

FROM:    Linda Lye, Staff Attorney
         Fax: (415) 255-1478

PAGES:   9 (including cover)

# Exhibit 3



*Office of Enforcement Operations*                    *Washington, D.C. 20530*

APR 23 2013

Linda Lye, Esq.
ACLU
39 Drumm Street                    Re:    CRM-201300299F
San Francisco, CA 94111                   KWC:CPS

Dear Ms. Lye:

        The Criminal Division of the U.S. Department of Justice acknowledges receipt of your Freedom of Information Act request dated April 11, 2013. In that request, you asked for access to records concerning "the government's use of mobile tracking technology commonly known as a StingRay but more generically known as an International Mobile Subscriber Identity or IMSI Catcher." Your request has been assigned file number CRM-201300299F. You should refer to this number in any future correspondence with this Office.

        The records you seek require a search in another Section of the Criminal Division, and so your request presents "unusual circumstances" under the FOIA. See 5 U.S.C. 552 § (a)(6)(B)(i)-(iii). Because of these unusual circumstances, we need to extend the twenty day time limit to respond to your request beyond the ten additional days provided by the statute. The time needed to complete our processing of your request will necessarily depend on the complexity of our records search and on the volume and complexity of any records located. In an effort to facilitate our records search, you may wish to narrow the scope of your request to limit the number of potentially responsive records or agree to an alternative time frame for processing, should records be located; or you may wish to await the completion of our records search to discuss either of these options.

        This Office has not yet made a decision on your request for a fee waiver and request for news media fee status. We will do so after we determine whether fees will be assessed for this request. In your letter you agreed to pay fees up to $200 in the event that a fee waiver is not granted.

        Furthermore, you have requested expedited processing of your request pursuant to the Department's standard involving "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." See 28 C.F.R. § 16.5(d)(iv) (2012). Pursuant to Department policy, we directed your request to the Director of Public Affairs, who makes the decision whether to grant or deny expedited processing under this standard. See id. § 16.5(d)(2).

        Please be advised that as of the date of this letter, that determination is still pending with the Office of Public Affairs. Once we have received notification of the Director's decision, we will promptly notify you.

If you have any questions or wish to discuss reformulation or an alternative time frame for the processing of your request, you may contact me by telephone at (202) 616-0307, or you may write to me at the Criminal Division, United States Department of Justice, Suite 1127, Keeney Building, 950 Pennsylvania Avenue, NW, Washington, DC 20530-0001. Thank you for your interest in the Criminal Division.

Sincerely,

*Kenneth Courter*

Kenneth Courter
Acting Chief
FOIA/PA Unit

# Exhibit 4



**U.S. Department of Justice**

Criminal Division

---

**MAY 3 0 2013**

Linda Lye, Esq.
ACLU
39 Drumm Street                    Re:    CRM-201300299F
San Francisco, CA 94111                  KWC:CPS

Dear Ms. Lye:

    This letter is in reference to your Freedom of Information Act request dated April 23, 2013, asking for access to records concerning "the government's use of mobile tracking technology commonly known as a StingRay but more generically known as an International Mobile Subscriber Identity or IMSI Catcher."

    You asked for expedited processing of your request pursuant to the Department's standard involving "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." See 28 C.F.R. § 16.5(d)(iv) (2012).  Pursuant to Department policy, we directed your request to the Director of Public Affairs, who makes the decision whether to grant or deny expedited processing under this standard.  See id. § 16.5(d)(2).

    The Director has determined that your request for expedited processing should be granted.  Accordingly, your request has been assigned to a FOIA Specialist in this Office and a records search has been initiated in the Office of the Computer Crime and Intellectual Property Section.

    If you have any questions, you may contact me by telephone at (202) 616-0307, or you may write to me at the Criminal Division, United States Department of Justice, Suite 1127, Keeney Building, 950 Pennsylvania Avenue, NW, Washington, DC 20530-0001.  Thank you for your interest in the Criminal Division.

                    Sincerely,

                    Kenneth Courter
                    Acting Chief
                    FOIA/PA Unit