1

2

3                          UNITED STATES DISTRICT COURT

4                        NORTHERN DISTRICT OF CALIFORNIA

5

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF NORTHERN CALIFORNIA, | Case No.  13-cv-03127-MEJ |
| Plaintiff, | **ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT** |
| v. | Re: Dkt. Nos. 35, 36 |
| DEPARTMENT OF JUSTICE, | |
| Defendant. | |

11

12                                **INTRODUCTION**

13          Plaintiff American Civil Liberties Union (the "ACLU") filed this lawsuit under the

14   Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking to compel the release of records

15   concerning the federal Government's use of mobile tracking technology known as a cell site

16   simulator[1] or "CSS."  Compl. ¶ 1, Dkt. No. 1.  Pending before the Court are the parties' cross-

17   motions for summary judgment.  Dkt. No. 35 ("Gov. Mot."); Dkt. No. 36 ("Pl. Mot.").  Having

18   considered the parties' positions, relevant legal authority, and the record in this case, the Court

19   **GRANTS IN PART** and **DENIES IN PART** the Government's Motion and **GRANTS IN PART**

20   and **DENIES IN PART** the ACLU's Motion for the reasons set forth below.

21                                **BACKGROUND**

22   **A.      The FOIA Request and Stipulated Search Parameters**

23          On April 11, 2013, the ACLU submitted a FOIA request to the United States Department

24   of Justice's ("DOJ") Criminal Division and the Executive Office for United States Attorneys

25   _____

26   [1] Cell site simulators, also known as "StingRays" (a brand name of one such device) or IMSI
     catchers (referring to the unique International Mobile Subscriber Identity number assigned to
27   wireless devices), function by masquerading as the cellular phone towers used by wireless
     companies such as AT&T and T-Mobile.  Lye Decl. ¶ 15, Dkt. No. 37, and Ex. 9, Dkt. No. 37-12.
28   In doing so, they are used to identify each phone's unique numeric identifier and location, or
     capture the communications content of targets and bystanders alike.  Lye Decl. ¶ 15.

United States District Court
Northern District of California

("EOUSA") for records "pertaining to the federal government's use of mobile tracking technology commonly known as a StingRay but more generically known as an International Mobile Subscriber Identity or IMSI Catcher."  Compl., Ex. 2; Sprung Decl., Ex. A, Dkt. No. 35-2. Specifically, the FOIA request sought the following:

> 1) Policies, procedures, practices, legal opinions, memoranda, briefs, correspondence (including e-mails) and training materials, template applications, template affidavits in support of applications, template proposed court orders or warrants, and any other document referencing or relating to IMSI catchers;

> 2) Policies, procedures, practices, legal opinions, memoranda, briefs, correspondence (including e-mails), training materials, and any other document referencing or relating to the Wireless Intercept and Tracking Team of the Federal Bureau of Investigation; and

> 3) All documents relating to the disclosure to the public and media coverage of [a] May 23, 2011 email attached to [plaintiff's request].

*Id.*  The FOIA request also sought documents identified in response to an earlier FOIA request by Christopher Soghoian from August 1, 2011 (the "Soghoian Request").  *Id.*  The ACLU asked for expedited processing of its request pursuant to 5 U.S.C. § 522(a)(6)(E) on the grounds that this matter is of "widespread and exceptional media interest" in which there exists "possible questions about the government's integrity which affect public confidence."  *Id.*

On July 8, 2013, the ACLU filed the present suit, alleging that the Government had not yet provided a substantive response.  Compl. ¶ 3.  In a letter dated July 10, 2013, the DOJ granted the ACLU's request for expedited processing.  Lye Decl. ¶ 2 & Ex. 18, Dkt. No. 37-15.  The parties later enter into a stipulation regarding the scope and processing of the ACLU's request, with some documents to be processed by the EOUSA and others to be process by the Criminal Division.  *See* Dkt. No. 14.  Among other things, the stipulation did the following:

- limited the search period to between January 1, 2008 and August 30, 2013;

- limited the search for Parts 1-2 to "final policies, procedures and practices referencing or relating to either IMSI catchers or the Wireless Intercept and Tracking Team of the Federal Bureau of Investigation [FBI]" using agreed-upon search terms;

- limited the search for Part 3 to "documents relating or referring to the disclosure to the

2

1    public and media coverage pertaining to the May 23, 2011 email[;]"

2    • provided that the Criminal Division would have its Computer Crime and Intellectual

3       Property Section ("CCIPS") and Electronic Surveillance Unit ("ESU") search for

4       responsive documents within its possession, custody, or control;

5    • provided that EOUSA's FOIA unit would work with the Criminal Chiefs for the United

6       States Attorney's Offices for ten specified federal districts, as well as the directors and

7       deputy directors of certain other specified EOUSA component offices, to identify

8       responsive documents within their possession, custody, or control; and

9    • provided that the Government would process all documents identified in response to

10      the Soghoian Request.

11   *Id.* at 2-4. Both the Criminal Division and EOUSA have confirmed that they searched for records

12   in compliance with the stipulation, and the ACLU has not contended otherwise. *See* Sprung Decl.

13   ¶¶ 11-20; Kornmeier Decl. ¶ 5.

**B.    The Government's Response**

15        In December 2013, EOUSA disclosed one page and informed the ACLU that it was

16   withholding 138 pages in full pursuant to FOIA Exemptions 5, 7(C), and 7(E). Kornmeier Decl. ¶

17   5 and Exs. A & B. The Criminal Division disclosed seven pages in part and informed the ACLU

18   it was withholding 209 pages in full pursuant to FOIA Exemptions 5, 6, 7(A), 7(C), 7(E), and

19   7(F). Sprung Decl. ¶ 24 and Ex. F.

20        In the course of briefing their motions for summary judgment, the parties exchanged

21   additional information and some additional documents, narrowing the focus of their dispute as to

22   the Criminal Division documents. *See generally* Suppl. Sprung Decl. & Suppl. Lye Decl. On

23   February 3, 2015, the Court requested that the parties submit a joint statement clarifying the scope

24   of the ACLU's remaining challenges. Dkt. No. 43. The Order also gave the Government an

25   opportunity to submit additional declarations or evidence supporting asserted exemptions. *Id.*

26   The ACLU was likewise given the opportunity to submit additional declarations as needed. *Id.*

27        The parties responded with a joint statement on March 3, 2015. Dkt. No. 46. The

28   Government submitted an additional declaration in support of the Criminal Division documents,

1    but stated that "with respect to the EOUSA templates, defendant rests on the *Vaughn* descriptions

2    for these documents and the Declaration of John Kornmeier submitted with defendant's opening

3    motion for summary judgment (ECF No. 35-1)."  Jt. Stmnt. at 23.

4         As it stands, in the dispute with the EOUSA, the ACLU seeks two different set of legal

5    templates described more fully below.  *Id.* at 21-23.  In the dispute with the Criminal Division, the

6    issue is whether it should produce: (1) templates or "go-bys" relating to applications and proposed

7    orders for authorization to use CSS and related technology; (2) legal guidance memoranda,

8    including an email with an attached description of how CSS is utilized by law enforcement; (3) an

9    excerpt from the USA Book, a DOJ agency manual; and (4) a sealed search warrant and

10   supporting application and affidavit.  *See id.* at 1-21.

**C.    Hearing and *In Camera* Review**

12        On April 2, 2015, the Court held a hearing on this matter.  Dkt. No. 50.  Much of the

13   parties' arguments involved comparing this case to a prior order in the related case, *Am. Civil

14   Liberties Union of N. Cal. v. Dep't of Justice* ("*ACLU I*"), ___F. Supp. 2d ___, 2014 WL 4954277,

15   at *9 (N.D. Cal. Sept. 30, 2014), which involved the same parties and a similar subject matter.

16   The Government has appealed that Order.  *See ACLU I*, No. 12-CV-04008-MEJ (N.D. Cal.), Dkt.

17   No. 66.  At the hearing, the Court asked the parties whether they would consider staying this case

18   pending the outcome of the related action.  *See* Dkt. No. 50.  The parties both agreed that they

19   preferred a ruling on this case before the Court of Appeals decides *ACLU I.  See id.*

20        The parties agreed, however, to allow the Government to submit the EOUSA documents as

21   well as a sampling of the Criminal Division documents for the Court's *in camera* review.  *Id.*

22   Consequently, the Court ordered Documents 3 and 4 from the Kornmeier Declaration to be lodged

23   with the Court, as well as the following documents from the Third Sprung Declaration: CRM-Lye-

24   39451-39484 (only the portion containing the sealing order); CRM-Lye-2541 (USA Book); and

25   internal memorandum at CRM-Lye-2948, CRM-Lye-3818-3825, CRM-Lye-9853-9897, CRM-

26   Lye-15311-15316, CRM-Lye-28119-28126, CRM-Lye-34065-34066, and CRM-Lye-17543-

27   17544.  Dkt. No. 49.  Additionally, the Court asked the Government to submit a list of documents

28   that it proposed the Court should view as a representative sample of the Criminal Division

United States District Court
Northern District of California

4

United States District Court
Northern District of California

1   templates. *Id.* The Court gave the ACLU the opportunity to respond if it believed that other or

2   additional documents should be submitted. *Id.*

3        The Government submitted its proposed list on April 17, 2015. Dkt. No. 51. The ACLU

4   did not file a response. Accordingly, the Court ordered that the Government lodge with the Court

5   the documents it proposed on its list. Dkt. No. 52. This sample of documents includes the

6   following: CRM-Lye-9002-9010; CRM-Lye-9011-9019; CRM-Lye-00015173-00015181; CRM-

7   Lye-00015200-00015207; CRM-Lye-00031754-00031777; and CRM-Lye-00038268-00038270.

8   *Id.* According to the Government, these documents are substantially similar to other withheld

9   documents. *See* Dkt. No. 51 at 1-2 n.1-5. The Government has timely lodged all documents for

10   the Court's *in camera* review. Now, having had the opportunity to conduct an *in camera* review

11   of the above-referenced documents, the Court issues the following Order.

12                              **LEGAL STANDARD**

13   **A.      The FOIA Statutory Scheme**

14        FOIA's "core purpose" is to inform citizens about "what their government is up to."

15   *Yonemoto v. Dep't of Veterans Affairs*, 686 F.3d 681, 687 (9th Cir. 2012) (quoting *Dep't of Justice*

16   *v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773, 775 (1989)). This purpose is

17   accomplished by "permit[ting] access to official information long shielded unnecessarily from

18   public view and attempt[ing] to create a judicially enforceable public right to secure such

19   information from possibly unwilling official hands." *EPA v. Mink*, 410 U.S. 73, 80 (1973). Such

20   access "ensure[s] an informed citizenry, vital to the functioning of a democratic society, needed to

21   check against corruption and to hold the governors accountable to the governed." *John Doe*

22   *Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (citation omitted). Congress enacted FOIA

23   to "clos[e] the loopholes which allow agencies to deny legitimate information to the public." *U.S.*

24   *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 150 (1989) (citations and internal marks omitted).

25        At the same time, FOIA contemplates that some information can legitimately be kept from

26   the public through the invocation of nine "Exemptions" to disclosure. *See* 5 U.S.C. § 552(b)(1)-

27   (9). "These limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the

28   dominant objective of the Act." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532

U.S. 1, 7-8 (2001) (citation omitted).  "Consistently with this purpose, as well as the plain language of the Act, the strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents."  *United States Dep't of State v. Ray*, 502 U.S. 164, 173 (1991).

**B.      Summary Judgment Standard in FOIA Cases**

        "Summary judgment is the procedural vehicle by which nearly all FOIA cases are resolved."  *Nat'l Res. Def. Council v. U.S. Dep't of Def.*, 388 F. Supp. 2d 1086, 1094 (C.D. Cal. 2005) (quoting *Mace v. EEOC*, 37 F. Supp. 2d 1144, 1145 (E.D. Mo. 1999), *aff'd sub nom. Mace v. EEOC*, 197 F.3d 329 (8th Cir. 1999)).  The underlying facts and possible inferences are construed in favor of the FOIA requester.  *Id.* at 1095 (citing *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983)).  Because the facts are rarely in dispute in a FOIA case, the Court need not ask whether there is a genuine issue of material fact.  *Minier v. CIA*, 88 F.3d 796, 800 (9th Cir. 1996).

        The standard for summary judgment in a FOIA case generally requires a two-stage inquiry.  *See Animal Legal Def. Fund v. FDA*, 2013 WL 4511936, at *3 (N.D. Cal. Aug. 23, 2013).  Under the first step of the inquiry, the Court must determine whether the agency has met its burden of proving that it fully discharged its obligations under FOIA.  *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985) (citing *Weisberg*, 705 F.2d at 1350-51).  In the second stage of the inquiry, the Court examines whether the agency has proven that the information that it withheld falls within one of the nine FOIA exemptions.  5 U.S.C. § 552(a)(4)(B); *Ray*, 502 U.S. at 173 ("The burden remains with the agency when it seeks to justify the redaction of identifying information in a particular document as well as when it seeks to withhold an entire document."); *Dobronski v. FCC*, 17 F.3d 275, 277 (9th Cir. 1994).  When an agency chooses to invoke an exemption to shield information from disclosure, it bears the burden of proving the applicability of the exemption.  *See Reporters Comm.*, 489 U.S. at 755.  An agency may withhold only that information to which the exemption applies, and must provide all "reasonably segregable" portions of that record to the requester.  5 U.S.C. § 552(b)(9); *see Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).

United States District Court
Northern District of California

6

1        To carry their burden on summary judgment, "agencies are typically required to submit an

2   index and 'detailed public affidavits' that, together, 'identify[ ] the documents withheld, the FOIA

3   exemptions claimed, and a particularized explanation of why each document falls within the

4   claimed exemption.'" *Yonemoto*, 686 F.3d at 688 (quoting *Lion Raisins v. Dep't of Agric.*, 354

5   F.3d 1072, 1082 (9th Cir. 2004)) (modification in original).  These submissions—commonly

6   referred to as a *Vaughn* Index—must be from "affiants [who] are knowledgeable about the

7   information sought" and "detailed enough to allow [a] court to make an independent assessment of

8   the government's claim [of exemption]." *Id*. (citing *Lion Raisins*, 354 F.3d at 1079; 5 U.S.C. §

9   552(a)(4)(B)).  The government may also submit affidavits to satisfy its burden, but "the

10  government 'may not rely upon conclusory and generalized allegations of exemptions.'" *Kamman*

11  *v. IRS*, 56 F.3d 46, 48 (9th Cir. 1995) (quoting *Church of Scientology v. Dep't of the Army*, 611

12  F.2d 738, 742 (9th Cir. 1980)).  The government's "affidavits must contain 'reasonably detailed

13  descriptions of the documents and allege facts sufficient to establish an exemption.'" *Id*. (quoting

14  *Lewis v. IRS*, 823 F.2d 375, 378 (9th Cir. 1987)).  Courts "accord substantial weight to an

15  agency's declarations regarding the application of a FOIA exemption." *Shannahan v. IRS*, 672

16  F.3d 1142, 1148 (9th Cir. 2012) (citing *Hunt v. CIA*, 981 F.2d 1116, 1119-20 (9th Cir. 1992)).

17       Finally, FOIA requires that "[a]ny reasonably segregable portion of a record shall be

18  provided to any person requesting such record after deletion of the portions which are exempt

19  under this subsection."  5 U.S.C. § 552(b).

20                                  **DISCUSSION**

21       Because the parties have previously agreed upon the scope and methods of the DOJ's

22  search for responsive documents, the only issue for the Court to decide on summary judgment is

23  whether the Government properly withheld records under the FOIA exemptions.  The Government

24  contends that it is authorized to withhold documents under the following exemptions:

25          &bull; Exemption 5 (attorney work product privilege, attorney-client privilege, and

26             deliberative process privilege)

27          &bull; Exemption 6 (private personnel and medical files)

28          &bull; Exemption 7 (law enforcement records or information)

United States District Court
Northern District of California

In addition to these exemptions, the Government argues that (1) it may not disclose records courts have sealed in other cases, and (2) it has already produced all reasonably segregable portions of responsive records.  The Court considers each of the documents at issue below.

**A.     Templates**

Both the EOUSA and the Criminal Division withheld templates: the EOUSA withheld templates under FOIA Exemption 5, and the Criminal Division withheld templates pursuant to both FOIA Exemptions 5 and 7(e).

1.     EOUSA Templates

FOIA Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  This provision essentially grants an agency the same power to withhold documents as it would have in the civil discovery context.  *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975).

The EOUSA withheld the following documents on attorney work-product grounds: (1) a set of templates from the U.S. Attorney's Office ("USAO") for the Central District of California, consisting of (a) an Application for Use of an Electronic Serial Number Identifier, with a suggested memorandum of points and authorities and a proposed order, and (b) an Ex Parte Application for a Warrant Authorizing the Disclosure of GPS and Cell Site Information and Use of Mobile Electronic Device, with a request to seal the agent's declaration and the warrant (Kornmeier Decl., Ex. B at 2-3 ("Doc. #3")); and (2) a set of templates from the USAO for the Eastern District of Wisconsin consisting of an Application for a Warrant Authorizing the Disclosure of Data Relating to a Specified Cellular Telephone, with a warrant authorizing the disclosure (*Id.* at 3-4 ("Doc. #4")).[2]  The DOJ contends that these documents reflect the opinions and thought processes of attorneys "in the clear anticipation of serial litigation" and fall squarely

---

[2] The EOUSA also withheld a one-page email from an FBI Assistant General Counsel to an Assistant United States Attorney ("AUSA") in the District of Arizona regarding a criminal case, which discusses the best way to describe the use of a particular tracking technique in response to a question from the criminal defendant (Kornmeier Decl., Ex. B at 1-2 (Doc. #2)).  The ACLU does not seek disclosure of this document.  Pl. Mot. at 25.

United States District Court
Northern District of California

within the definition of work product.  Gov. Mot. at 8-9; Kornmeier Decl. ¶¶ 7-8; Ex. B at 2-4.

Attorney work-product protects "against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation" as well as "documents prepared in anticipation of litigation."  Fed. R. Civ. P. 26(b)(3).  The purpose of this protection is to "protect[] the attorney's thought processes and legal recommendations from the prying eyes of his or her opponent."  *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1301 (Fed. Cir. 2006) (quotation and internal marks omitted), *cert. denied sub nom. TiVo, Inc. v. EchoStar Commc'ns Corp.*, 549 U.S. 1096 (2006); *see also Hickman v. Taylor*, 329 U.S. 495, 508 (1947).  Importantly, "[i]f a document is fully protected as work product, then segregability is not required."  *Judicial Watch, Inc. v. Dep't of Justice*, 432 F.3d 366, 371 (D.C. Cir. 2005) ("factual material is itself privileged when it appears within documents that are attorney work product"); *see also Tax Analysts v. IRS*, 117 F.3d 607, 620 (D.C. Cir. 1997) ("[a]ny part of [a document] prepared in anticipation of litigation, not just the portions concerning opinions, legal theories, and the like, is protected by the work product doctrine and falls under exemption 5.").  "'In light of the strong policy of the FOIA that the public is entitled to know what its government is doing and why, [E]xemption 5 is to be applied as narrowly as consistent with efficient Government operation.'"  *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 979 (9th Cir. 2009) (quoting *Maricopa Audubon Soc'y v. U.S. Forest Serv.*, 108 F.3d 1089, 1093 (9th Cir. 1997)), *cert. denied*, 561 U.S. 1007 (2010).

The parties dispute whether EOUSA's withheld documents were "prepared in anticipation of litigation."  The ACLU contends that the templates and proposed orders are not attorney work product because they do not pertain to any particular matter or specific case. Pl. Mot. at 12-13, 25. It argues that the Government offers no legal or factual basis to distinguish this case from *ACLU I*. In *ACLU I*, this Court considered whether template applications for court authorization to conduct electronic surveillance were protected as work product.  2014 WL 4954277, at *7-10.  The *ACLU I* templates were an "application and order for the use of a pen register and trap and trace device." *Id.* at *7.  On review of the Government's supporting declarations and *Vaughn* Index, the Court concluded that the Government had not shown that these templates were protected as work

United States District Court
Northern District of California

United States District Court
Northern District of California

1    product because there was no indication that they "provide legal theories or strategies for use in

2    criminal litigation." *Id.* at *9. "Rather, they instruct government attorneys on how to apply for an

3    order for location tracking information." *Id.*; *see also Judicial Watch, Inc. v. U.S. Dep't of*

4    *Homeland Sec.*, 926 F. Supp. 2d 121, 143 (D.D.C. 2013) ("While the memorandum may be, in a

5    literal sense, 'in anticipation of litigation'—it simply does not anticipate litigation in the way the

6    work-product doctrine demands, as there is no indication that the document includes the mental

7    impressions, conclusions, opinions, or legal theories of . . . any [] agency attorney, relevant to any

8    specific, ongoing or prospective case or cases.").

9            While the foregoing was the Court's primary basis for its opinion, it also found that the

10    DOJ had "failed to establish that the template pertains to a specific claim or consists of more than

11    general instructions to its attorneys with regard to applying for location tracking orders." *ACLU I*,

12    2014 WL 4954277, at *10. Where government lawyers act "as legal advisors protecting their

13    agency clients from the possibility of future litigation," the work product privilege may apply to

14    documents advising the agency as to potential legal challenges. *Id*. at *9 (quoting *In re Sealed*

15    *Case*, 146 F.3d 881, 885 (D.C. Cir. 1998)). But when government lawyers are acting as

16    "prosecutors or investigators of suspected wrongdoers," the specific-claim test applies. *Id.*

17    (citing *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 864-66 (D.C. Cir. 1980) and *SafeCard*

18    *Servs. Inc. v. SEC*, 926 F.2d 1197, 1202-03 (D.C. Cir. 1991)). As a result, the work product

19    privilege only attaches to documents prepared "in the course of an active investigation focusing

20    upon specific events and a specific possible violation by a specific party." *Id.* at *10 (quoting

21    *Safecard*, 926 F.2d at 1203 and citing *Judicial Watch*, 926 F. Supp. 2d at 139-42). The Court

22    found that U.S. Attorneys act as prosecutors in utilizing these applications and orders, and not as

23    attorneys advising an agency client on the agency's potential liability. *Id.* Consequently, the

24    Court ultimately found that the documents the DOJ sought to withhold were not work product as

25    they "set forth general legal standards, not an analysis of issues arising in 'identified litigation' or

26    strategic decisions regarding any particular investigation." *Id.* at *10 n.5. The ACLU now urges

27    the Court to adopt a similar holding here.

28            But the Court did not limit its holding to the degree the ACLU seeks. Specifically, the

ACLU argues that the Court's earlier holding in *ACLU I* drew a distinction between "offensive and defensive postures" in determining whether the specific claim test applies. *See* Pl. Reply at 4, Dkt. No. 41. To the extent the ACLU reads the Court's holding this broadly, that was not the Court's intent. Importantly, in *ACLU I*, in addition to considering the "templates," the Court also considered whether certain internal memoranda were covered as attorney work product. The internal memoranda, like the templates here, were "prepared because of ongoing litigation and the prospect of future litigation" and were "intended to outline possible arguments and or litigation risks prosecutors could encounter" and to "assess the strengths and weaknesses of alternative litigating positions." 2014 WL 4954277, at *11. Consequently, the Court found that the memoranda were protected as work product because they were "created to assist AUSAs with recurring litigation issues . . . that have arisen in current litigation." *Id.* The Court concluded that "[w]here, as here, the purpose of the documents is to convey litigation strategy, rather than convey routine agency policy, they are entitled to work product protection." *Id.* (citing *Am. Immigration Council v. U.S. Dep't of Homeland Sec.*, 905 F. Supp. 2d 206, 221 (D.D.C. 2012)). As indicated, the primary concern in determining whether a document is protected as work product was and continues to be whether it was created in anticipation litigation in the way the work-product doctrine demands, i.e., by risking revealing mental impressions, conclusions, opinions, or legal theories of an agency attorney, relevant to any specific, ongoing, or prospective case or cases.

The Ninth Circuit has stated that "[t]o qualify for work-product protection, documents must: (1) be 'prepared in anticipation of litigation or for trial' and (2) be prepared 'by or for another party or by or for that other party's representative." *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011) (quoting *In re Grand Jury Subpoena, Mark Torf/Torf Envtl. Mgmt. ("Torf")*, 357 F.3d 900, 907 (2004)). *Torf* further elaborates that:

> [t]he "because of" standard does not consider whether litigation was a primary or secondary motive behind the creation of a document. Rather, it considers the totality of the circumstances and affords protection when it can fairly be said that the "document was created because of anticipated litigation, and *would not have been created in substantially similar form but for the prospect of that litigation* [.]"

*Id.* at 908 (quotation omitted; emphasis added). In concluding that the privilege applied on *Torf*'s

11

1   facts, the Ninth Circuit stated that "[t]he documents are entitled to work product protection

2   because, taking into account the facts surrounding their creation, their litigation purpose *so*

3   *permeates any non-litigation purpose that the two purposes cannot be discretely separated* from

4   the factual nexus as a whole." *Id.* at 910 (emphasis added); *see also City & Cnty. of Honolulu v.*

5   *U.S. EPA*, 2009 WL 855896, at *9 (D. Haw. Mar. 27, 2009) ("Under Ninth Circuit law, the test is

6   whether the attorney would have generated the material 'but for' the prospect of litigation, though

7   it is immaterial whether or when the litigation actually begins."); *Elkins v. D.C.*, 250 F.R.D. 20, 26

8   (D.D.C. 2008) ("Plaintiffs argue that some documents were not prepared in anticipation of *this*

9   litigation, *i.e.* they were prepared in anticipation of obtaining the search warrant and thus in

10  anticipation of the administrative proceeding.  But the doctrine protects documents prepared in

11  anticipation of litigation; it does not have to be for this district court proceeding." (citations

12  omitted; emphasis in original)).

13          This case presents a novel question in the work product realm as the Government's

14  applications and proposed orders seek authorization to obtain and collect information that will be

15  used in investigations of suspected criminals and that may ultimately lead to the prosecution of

16  those individuals.  According to the Government's supporting declaration, these templates were

17  prepared in anticipation of "serial litigation."  Kornmeier Decl., Ex. B at 2-4.  They contain

18  "specific research" by Government attorneys and those attorneys' "opinions and thought

19  processes."  *Id.*  Specifically, the EOUSA's *Vaughn* Index entries for the withheld documents state

20  in relevant part:

21              Government attorneys, based on their research and analysis, have
            prepared this document as legal advice, in the clear anticipation of
22          serial litigation. They contain specific research that the attorneys for
            the USAO think are pertinent to criminal litigation involving
23          tracking devices. [They contain instructions for alternative
            situations.][3] These are the opinions and thought processes of
24          attorneys in anticipation of litigation[.]

25  Kornmeier Decl., Ex. B at 2-4.[4]  The Government explains that "the templates were intended to

26  _____

27  [3] This sentence was only included for Doc. #3, not Doc. #4.

28  [4] *Compare ACLU I*, 2014 WL 4954277, at *7, where *Vaughn* Index stated:

United States District Court
Northern District of California

1    assist prosecutors in anticipating and addressing potential legal risks and pitfalls in applying for

2    the CSS."  Gov. Reply at 6, Dkt. No. 40.

3           The actual purpose of the documents is to obtain the sought-after information, but the

4    ultimate goal of that information is to use it towards the prosecution of alleged criminals.  In that

5    prosecution, a criminal defendant may challenge the Government's evidence through a motion to

6    suppress, which in turn may implicate a number of the same factual and legal issues addressed in

7    these withheld documents.  In this sense, the Court cannot divorce the non-litigation purpose—i.e.,

8    simply procuring court authorization to obtain the suspected evidence—from the litigation

9    purpose—i.e., forming the support for the criminal case and developing arguments to protect

10   against attempts to prevent the acquired evidence's use.  *See Gen. Elec. Co. v. Johnson*, 2006 WL

11   2616187, at *11 (D.D.C. Sep. 12, 2006) ("a work-product assertion must be supported by some

12   articulable, specific fact or circumstance that illustrates the reasonableness of a belief that

13   litigation was foreseeable.").  Put another way, there are two stages at which the Government must

14   support that the evidence acquired can be used in criminal litigation: first, in applying for the

15   authorization to obtain the evidence, and second, in defending a potential motion to suppress.  In

16   reviewing the *in camera* documents, the Government's legal analysis is geared toward the first

17   stage but that same analysis could readily be applied later in the criminal litigation including on a

18   motion to suppress.  The litigation purpose and concerns in the later adversarial setting permeate

19   the document's non-litigation purpose.  Accordingly, the Court finds these documents protected as

20   work product.  *See also Elkins*, 250 F.R.D. at 26 (finding documents prepared in anticipation of

21   obtaining a search warrant protected as work product).

22          Additionally, if a document is covered by the attorney work-product privilege, the

23

_____

24          These 16 pages were created by the U.S. Attorney's Office for the
        Northern District of California.  The 16 pages are templates for an
25      application and order for the use of a pen register and trap and trace
        device.  The templates incorporate the interpretation of the law by
26      the U.S. Attorney's Office and give advice on what information to
        include in particular situations.  These templates represent the
27      opinions of attorneys for the U.S. Attorney's Office on the
        applicable law and are prepared to provide legal advice and in
28      anticipation of litigation[.]

United States District Court
Northern District of California

1   Government need not segregate and disclose its factual contents.  *See* 5 U.S.C. § 552(b); *Maricopa*

2   *Audubon Soc'y*, 108 F.3d at 1092; *Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 1148 (9th

3   Cir. 2008).  Having reviewed the *in camera* documents, and finding the legal analysis within

4   closely tied to the facts of how this technology is used, the Court finds that the documents were

5   created in whole in anticipation of litigation.

6           2.       Criminal Division Templates

7           The Criminal Division also withheld templates under Exemption 5 as protected by the

8   attorney work product privilege,[5] as well as Exemption 7(E).  These templates include

9   applications, agent affidavits, memorandums of law, and proposed orders for the use of a CSS and

10  other investigative techniques.  Second Sprung Decl. ¶ 27; Third Sprung Decl. ¶ 8.

11          The Government maintains that the templates withheld by the Criminal Division were

12  prepared "in anticipation of specific litigation—to wit, a criminal prosecution in which evidence

13  derived from a CSS was to be instrumental."  Gov. Mot. at 18-19.  It argues that the withheld

14  materials are "litigation strategy documents that were provided by DOJ attorneys—frequently

15  Criminal Division subject matter experts, addressing questions from prosecutors arising from

16  specific cases—to advise prosecutors on the types of legal risks and challenges confronting them

17  in applying for permission to use CSS."  Gov. Reply at 8.  "These documents anticipate a

18  foreseeable prosecution of the individuals implicated in the investigation of the criminal activity in

19  which the template will be used and are disseminated for the purpose of assisting prosecutors to

20  defend subsequent motions to suppress filed by criminal defendants."  Third Sprung Decl. ¶ 8;

21  Sec. Sprung Decl. ¶ 27; *see also* First Sprung Decl. ¶ 42(h).  "They are drafted or collected by

22  Criminal Division legal advisors who are subject matter experts for the use of federal prosecutors

23  who are working on active investigations."  *Id.* (all).  "The templates do not instruct government

24  attorneys on how they must apply for location tracking information, although they do contain

25  Criminal Division attorneys' interpretation of recent case law and reflect the strategies that

26

27  ───────────────────
    [5] The Government previously asserted that these templates were protected by the deliberative
28  process privilege, but the Government has withdrawn its claim to this privilege as to these
    documents.  *See* Third Sprung Decl. at 4 n.1; *see also* Jt. Stmnt. at 1-14.

United States District Court
Northern District of California

1    prosecutors may use to obtain court authorization."  *Id.* (all).

2           These descriptions parallel the Court's analysis above.  Specifically, the Government uses

3    these template applications, affidavits, memorandums of law, and proposed orders to secure court

4    permission to utilize CSS and related technology, which results in the foreseeable prosecution of

5    the individuals implicated in the investigation of the criminal activity.  The templates also provide

6    advice on the types of "legal risks" and challenges in applying for permission to use CSS and may

7    later help prosecutors in defending subsequent motions to suppress.  *See Schiller v. NLRB*, 964

8    F.2d 1205, 1208 (D.C. Cir. 1992)) (protecting an internal NLRB memorandum that "contain[ed]

9    advice on how to build an [Equal Access to Justice Act] defense and how to litigate EAJA cases,"

10   as well as other documents that outlined instructions for preparing and filing pleadings, contained

11   legal arguments, and identified supporting authorities), *abrogated on other ground by Milner v.*

12   *Dep't of the Navy*, 562 U.S. 562 (2011).  As with *ACLU I*'s legal memoranda, these documents

13   reflect strategies, opinions, and advice that arise from "specific cases" and are used by attorneys

14   working on "active investigations" and "foreseeable prosecution[s]."  Third Sprung Decl. ¶ 8.  In

15   accordance with the Court's analysis above, and having reviewed these documents *in camera*, the

16   Court finds the Criminal Division templates protected as work product under Exemption 5.

17   **B.      Memorandums**

18          The Government also withheld a variety of legal memoranda and an email under various

19   Exemptions described in turn below.  *See* Third Sprung Decl. ¶¶ 9-15; Suppl. Lye Decl. ¶¶ 12-13.

20          1.      Documents Withheld Under Exemptions 5 and 7(E)

21          First, several of the documents described as internal memorandum are substantially similar

22   to the so-called "template" or "go-by" documents the Court found protected as attorney work

23   product.  According to that same analysis, and having conducted an *in camera* review of the

24   following documents, the Court finds them protected as work product:

25   • **CRM-Lye-2948**, which contains "model language for federal prosecutors to include in a

26       proposed order authorizing the use of a CSS by DEA and other law enforcement personnel

27       under the PR/TT statute."  Third Sprung Decl. ¶ 9.

28   • **CRM-Lye-9853-9897**, which contains "advice of CCIPS legal advisors for prosecutors to

United States District Court
Northern District of California

follow when seeking court-authorization to use Title III and PR/TT orders authorizing the use of location tracking information in various scenarios arising in criminal investigations." *Id.* ¶ 11. "The document describes how the Government may obtain location tracking information, what types of information is available from wireless providers, when emergency authorization is available, what kind of legal process is required under various circumstances, notification requirements, and extraterritorial jurisdiction issues." *Id.* The document also includes with it "template applications and proposed orders for using each of the various technologies, and contains links for consent forms, model pleadings and briefs, selected court opinions, and training materials." *Id.* "Access to these materials is restricted to prosecutors and Criminal Division attorneys via the CCIPS intranet site." *Id.*

- **CRM-Lye-34065-34066** "contains advice of legal advisors in the Criminal Division for prosecutors to follow when handling kidnapping cases, including how to seek emergency authorization to engage in electronic surveillance and to use location tracking technologies when time is of the essence." *Id.* ¶ 14.

- **CRM-Lye-15311-15316 and CRM-Lye-19179-19184** are "copies of template applications and proposed orders for federal prosecutors to use when seeking court-authorization to use a CSS under the PR-TT statute. They also include cover memorandum from the Associate Director of the Criminal Division's Office of Enforcement Operations that describes the technology and provides legal guidance concerning what kinds of information may lawfully be obtained." *Id.* ¶ 12. The Government withheld these documents under Exemption 5 as attorney work product. *Id.*[6]

A review of these documents reveals that they were prepared in contemplation of issues arising in future litigation, and as such, the Court finds that a litigation purpose permeates these documents. Accordingly, Exemption 5 applies and these documents are properly withheld.

---

[6] Additionally, the Government withheld the documents under Exemptions 6 and 7(C) for "reveal[ing] the name and other personal information of the Associate Director for the Criminal Division's OEO." Third Sprung Decl. ¶ 12.

United States District Court
Northern District of California

1      However, second, the Government has not demonstrated that the following documents are

2   protected as attorney work product:

3   •   **CRM-Lye-3818-3825, CRM-Lye-23249-23256, CRM-Lye-33358-33365** are "copies of a

4        document containing advice of legal advisors in the Criminal Division for AUSAs to

5        follow when seeking court-authorization to utilize different location tracking technologies

6        for wireless devices in various scenarios in particular criminal investigations." *Id*. ¶ 10.

7        The document "discusses legal requirements, procedures to be followed, when an

8        individual's consent may be used in lieu of a court order, and a description of the

9        underlying technologies." *Id.*

10  •   **CRM-Lye-28119-28126** is "a collection and analysis of technical terminology, legal

11       authorities, and internal DOJ procedures prepared for the purpose of assisting federal

12       prosecutors and law enforcement agents concerning various types of electronic

13       surveillance used in criminal investigations, including location tracking technologies for

14       wireless devices." *Id.* ¶ 13.

15  According to the Government, all the documents described above "were prepared because the

16  Department of Justice was conducting a criminal prosecution or anticipating doing so" and were

17  created "to assist the Department in prosecutions and investigations." *Id*. ¶ 16.

18      But the Government has not shown how these documents were prepared in anticipation of

19  litigation in the way the work product doctrine contemplates.  Rather the documents provide

20  instructions to government attorneys about how they might seek to use the technology in various

21  circumstances.  In other words, they instruct government attorneys on how they must apply for

22  location tracking information.  *Compare ACLU I*, 2014 WL 4954277, at *9 (finding no attorney

23  work product where the Government's *Vaughn* Index and related affidavits established only that

24  the documents "instruct[ed] government attorneys on how to apply for an order for location

25  tracking information.").  Nothing about these documents or their supporting declarations

26  demonstrates that a litigation purpose permeates these documents.  Rather, the first set of

27  documents provides instructions about how to obtain authorization for use of the technology,

28  functioning more like an agency manual rather than revealing mental impressions.  And the

United States District Court
Northern District of California

United States District Court
Northern District of California

second set of documents contains a list of terms, regurgitating statutory definitions and, in some cases, dictionary definitions, with no indication that the disclosure of such a document would reveal mental impressions that would be detrimental or prejudicial in the adversarial process. Accordingly, the Court cannot find these documents protected as work product.

The question then is whether they are protected by Exemption 7(E).  FOIA Exemption 7 permits the government to withhold "records or information compiled for law enforcement purposes" under certain enumerated conditions.  5 U.S.C. § 552(b)(7).  Particularly, Exemption 7(E) provides that "records or information compiled for law enforcement purposes" may be withheld if they "would disclose techniques and procedures for law enforcement investigations or prosecutions." *Id*.  However, "Exemption 7(E) only exempts investigative techniques not generally known to the public." *Rosenfeld v. Dep't of Justice*, 57 F.3d 803, 815 (9th Cir. 1995). The Government may also withhold detailed information regarding a publicly known technique where the public disclosure did not provide "a technical analysis of the techniques and procedures used to conduct law enforcement investigations." *See Bowen v. U.S. Food & Drug Admin*., 925 F.2d 1225, 1228-29 (9th Cir 1991); *see also Elec. Frontier Found. v. Dep't of Defense*, 2012 WL 4364532, at *4 (N.D. Cal., Sep. 24, 2012).  "[T]he government must show, by evidence admissible on summary judgment, that release of the withheld information 'would reasonably be expected to risk circumvention of the law.'" *Id.* at *3 (quoting 5 U.S.C. § 552(b)(7)(E)).

The threshold test under Exemption 7 is whether the documents have a law enforcement purpose, which requires an examination of whether the agency serves a "law enforcement function." *Church of Scientology Int'l v. IRS*, 995 F.2d 916, 919 (9th Cir. 1993) (internal citation and quotation marks omitted).  In order to satisfy Exemption 7's threshold requirement, a government agency with a clear law enforcement mandate "'need only establish a rational nexus between enforcement of a federal law and the document for which [a law enforcement] exemption is claimed.'" *Rosenfeld*, 57 F.3d at 808 (internal citation omitted).  There is no dispute here that the DOJ has a clear law enforcement mandate and the two documents as to which the Criminal Division asserts law enforcement exemptions bear a rational nexus to enforcement of federal law.

The Government, however, provides little explanation as to how the disclosure of any of

18

the documents above "could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). The Government presents two primary arguments as to why Exemption 7(E) applies to the materials it has withheld. First, it argues in a footnote that Exemption 7(E) is best interpreted as providing categorical protection to materials describing "techniques and procedures" while its inquiry into whether "disclosure could reasonably be expected to risk circumvention" applies only to "guidelines." Gov. Reply at 7 n.4; *see also* 5 U.S.C. § 552(b)(7)(E). As the withheld materials relate to techniques and procedures, presumably—by the Government's logic—these materials would be categorically protected and properly withheld. In support, the DOJ cites *Asian Law Caucus v. U.S. Dep't of Homeland Sec.*, 2008 WL 5047839, at *3 (N.D. Cal. Nov. 24, 2008), which found that the Ninth Circuit had yet to "squarely address" the distinction between guidelines and techniques and procedures, but ultimately did not rule on whether categorical protection existed as to techniques and procedures. With respect to that court's finding, the Court agrees with the ACLU that the Ninth Circuit's holding in *Rosenfeld* "adopted [] as the law of this Circuit," that "Exemption 7(E) only exempts investigative techniques not generally known to the public." *Rosenfeld*, 57 F.3d at 815. This holding establishes that techniques and procedures are not categorically withheld under Exemption 7(E). *See id*. & n.9. The Court sees no cause to distinguish the Ninth Circuit's holding here.

Second, the Government argues that the information it seeks to protect "goes beyond" the known fact that the government can and does track individuals using CSS and instead provides "particularized detail on what tactics and factors DOJ attorneys take into account in deciding whether, how, and when to use CSS—information that could assist unlawful actors in evading detection." Gov. Reply at 7. However, several courts, including this one, have found inadequate an agency's conclusory assertions that Exemption 7(E) protects specifics about how and when the technique at issue is used if the technique itself is otherwise generally known to the public. *See Rosenfeld*, 57 F.3d at 815 (holding that the government "simply by saying that the 'investigative technique' at issue is not the practice but the application of the practice to the particular facts underlying that FOIA request" cannot be adequate under Exemption 7(E) because otherwise it would prove too much); *Am. Civil Liberties Union v. FBI*, 2013 WL 3346845, at *9 (N.D. Cal.

July 1, 2013) ("The FBI's conclusory assertion that, even though the technique is generally

known, the specifics on how and when the technique is used is not generally known, is not

adequate."); *Feshbach v. SEC*, 5 F. Supp. 2d 774, 787 (N.D. Cal. 1997) (rejecting Exemption 7(E)

withholding where government failed to "provide non-conclusory reasons why disclosure of each

category of withheld documents would risk circumvention of the law."); *ACLU I*, 2014 WL

4954277, at *15 (Exemption 7(E) unavailable where declarations "set forth only conclusory

statements that the public is not aware of the specifics of how or when the techniques are used, but

do not state that the techniques are not generally known to the public.").  This is not to suggest a

categorical exception to Exemption 7(E); in other words, the fact that the technique is generally

known will not make specific applications of that technique or procedure always subject to

disclosure.  But the Government cannot rely on conclusory assertions to show that release of the

withheld information risks circumventing of the law.  "Exemption 7(E) requires that the agency

demonstrate logically how the release of the requested information might create a risk of

circumvention of the law."  *Am. Civil Liberties Union v. FBI*, 2014 WL 4629110, at *11 (N.D.

Cal. Sept. 16, 2014) (citing *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009)).

The ACLU has put forward substantial evidence—including evidence the DOJ itself had

made public—that the techniques and procedures relating to the use of cell site simulators is

generally known to the public.  *See* Lye Decl., Ex. 1 (Electronic Surveillance Issues) at 151, 153;

Ex. 2 (Electronic Surveillance Manual) at 40[7], 48; Ex. 4 (Electronic Surveillance Manual Chapter

XIV, dated August 21, 3013, entitled "Cell Site Simulators/Digital Analyzers/Triggerfish").  CSS

and its use by the federal government has also been the subject of extensive news coverage.  Lye

Decl. ¶¶ 12, 13, & Exs. 6-7 (dozens of news articles about the government's use of CSS).  The

public domain evidently contains enough information about the technology behind CSS that

members of the public have actually created their own CSS devices.  Lye Decl. ¶ 16, Ex. 10.  This

evidence demonstrates that the public in general knows that the government possesses and utilizes

such cell phone technology in its investigations to locate and obtain information about the cell-

_____

[7] *See* Dkt. No. 48 for page 40 of the Electronic Surveillance Manual.

United States District Court
Northern District of California

phone holder.  The Government has not distinguished this case from *ACLU I*, for instance by addressing "the fact that the public is already aware that minimizing vehicular or cell phone usage will allow them to evade detection."  *ACLU I*, 2014 WL 4954277, at *14.  Thus, as in *ACLU I*, "[t]o the extent that potential law violators can evade detection by the government's location tracking technologies, that risk already exists."  *Id.*  And for that matter, the ACLU has presented evidence that the public already has tools that can detect CSS.  Lye Decl. ¶ 17, Ex. 11.

Of course, that is not to say that the mere existence of an already present risk or threat to effectiveness of the Government's investigative techniques is enough, alone, to make Exemption 7(E) inapplicable.  However, where, as here, the Government provides only conclusory statements showing no distinct risk associated with the disclosure of documents it seeks to withhold, application of Exemption 7(E) is improper.  *Rosenfeld*, 57 F.3d at 815 ("It would not serve the purposes of FOIA to allow the government to withhold information to keep secret an investigative technique that is routine and generally known."); *compare Bowen*, 925 F.2d at 1228-29 (government may withhold detailed information regarding a publicly known technique where the public disclosure provides "a technical analysis of the techniques and procedures used to conduct law enforcement investigations."); *Asian Law Caucus*, 2008 WL 5047839, at *4  (while use of watchlists to screen travelers was a matter of common knowledge, government could withhold information about the operation of those lists, which was not generally known or understood by the public).  Unlike *Bowen* and *Asian Law Causus*, the Government has not provided any indication, other than conclusory statements, that the withheld documents contain information that "goes beyond" what is already generally available to the public.  The Government bears the burden of demonstrating that the material is exempt from disclosure, but its current evidence— including the supplemental declaration ordered by the Court and the *in camera* documents—fails to provide the necessary support to meet its burden.  *See Maricopa Audubon Soc'y*, 108 F.3d at 1092 ("To meet its burden, the agency must offer oral testimony or affidavits that are 'detailed enough for the district court to make a de novo assessment of the government's claim of exemption.'" (citation omitted)).  Even reviewing these documents *in camera*, the Court cannot say that they reveal more than what is generally available to the public or that they risk

21

circumvention of the law such that the application of Exemption 7(E) is required.

       2.     <u>Email Withheld Under Exemptions 5, 6, and 7.</u>

      The Government also argues that it properly withheld the following document:

- **CRM-Lye-17543-17544**, "an email message dated August 22, 2012 from an ESU attorney to another Criminal Division attorney containing the Criminal Division's legal advice on how law enforcement may use its own equipment to obtain location information for a particular wireless device." Third Sprung Decl. ¶ 15. "The email describes the technology, what type of legal process is necessary, and what type of information the device can gather." *Id.* The government withheld the email under the attorney work product, the deliberative process, and the attorney-client privileges of Exemption 5, as well as Exemptions 6 and 7(C). *Id.*

The *Vaughn* Index describes this document as "**EMAIL.** ***Subject:*** N/A ***Re:*** Attached description and guidance on how cell site simulators and related technologies are utilized and implemented by law enforcement." *Vaughn* Index at 134, Dkt. No. 35-7; Jt. Stmnt. at 21. While the Government contests release of this document under several exemptions, it also acknowledges that the document "excerpts test of a document in the public domain, which has been released to Plaintiff." Third Sprung Decl. ¶ 15.

      Theoretically what remains for this Court's review is the non-public portion, but it is not evident which portion of the document the Government has continued to withhold. For clarity, the Government shall file a declaration following this Order indicating which portion of the document is non-public and presently withheld. The Court will issue an order regarding this email following its review of that declaration.

**C.**    **USA Book**

      The Government describes withheld document CRM-Lye-2541 as a page from USA Book on cell site simulators, Triggerfish, and cell phones, which "describes the underlying technology, discusses the legal basis for its use, identifies certain of the unique capacities of a CSS that present significant litigation risk, names the ESU attorney who is a legal expert on the subject, and references other relevant DOJ legal resources." Suppl. Sprung Decl. ¶ 26; Third Sprung Decl. ¶ 7.

1    The Index describes it as "USA Book, Electronic Surveillance, Cell Site Simulators, Triggerfish,

2    Cell Phones Re: Description of the technology."  Jt. Stmnt. at 1.  The Government asserts that it

3    properly withheld this document under the attorney work product of Exemption 5.  Third Sprung

4    Decl. ¶ 7; Jt. Stmnt. at 1.

5        The Government provides no grounds for why CRM-Lye-2541 is protectable as such.

6    First, its supporting declarations provide no indication that the material was prepared in

7    anticipation of litigation.  While the Third Sprung Declaration indicates that this document

8    contains the "legal basis" for the CSS's use, names an expert attorney on the subject, and refers to

9    legal resources, there is no indication that any part of this document was created in anticipation of

10   litigation, either current or prospective.  The *Vaughn* Index itself provides little explanation other

11   than that the document contains a "description of the technology."  *See* Jt. Stmnt. at 1.  This does

12   not show anything connecting the document to attorney work product.  Nothing in the

13   government's evidence shows that disclosure of this page from the USA Book threatens the

14   attorney work product protection's aim of "protect[ing] the attorney's thought processes and legal

15   recommendations from the prying eyes of his or her opponent."  *In re EchoStar*, 448 F.3d at 1301;

16   *see also Hickman*, 329 U.S. at 508.

17       Second, having reviewed this document *in camera*, the Court finds nothing that would be

18   protected as work product.  There is no indication that this page of the USA Book was prepared in

19   anticipation of litigation or that its "litigation purpose so permeates any non-litigation purpose that

20   the two purposes cannot be discretely separated from the factual nexus as a whole."  *Torf*, 357

21   F.3d at 910.  The document informs government officials about the technology, its legal basis, and

22   which resources are available in the event the technology is needed, but there is nothing that

23   demonstrates this document was created in anticipation of litigation in the way the work product

24   doctrine contemplates.

25       As the Government only sought protection of this document under Exemption 5, the Court

26   cannot find that this document is entitled to exemption.

27   **D.    Sealed Documents**

28       The parties' final dispute concerns CRM-Lye-39451-39484, which contains a search

United States District Court
Northern District of California

23

warrant issued by the U.S. District Court for the Central District of California, a supporting *ex parte* application and agent affidavit, and a sealing order authorizing the use of CSS in a particular investigation.  Third Sprung Decl. ¶ 6.  Previously, the ACLU asserted that the "DOJ should be ordered to produce the search warrant and supporting application and affidavit unless it submits a declaration averring that the investigation at issue remains active."  Pl. Reply at 14.  The Government's latest declaration states that "the underlying investigation has concluded and that none of the subjects of the investigation were charged."  Third Sprung Decl. ¶ 6.  Nevertheless, the matter "remains under seal."  *Id.*  According to the Government, "[t]he documents were properly withheld because the language of the sealing order indicates that it was intended to preclude disclosure while the seal remains in effect and therefore the DOJ has no discretion to release the documents in this matter."  *Id.*[8]

"[T]he mere existence of a court seal is, without more, insufficient to justify nondisclosure under the FOIA. Instead, only those sealing orders intended to operate as the functional equivalent of an injunction prohibiting disclosure can justify an agency's decision to withhold records that do not fall within one of the specific FOIA exemptions."  *Concepcion v. FBI*, 699 F. Supp. 2d 106, 111 (D.D.C. 2010) (quoting *Morgan v. United States*, 923 F.2d 195, 199 (D.C. Cir. 1991)); *cf. GTE Sylvania, Inc. v. Consumers Union of the U.S., Inc.*, 445 U.S. 375, 387 (1980).  The agency bears "the burden of demonstrating that the court issued the seal with the intent to prohibit the [agency] from disclosing the [document] as long as the seal remains in effect."  *Id.* (quoting *Morgan*, 923 F.2d at 198 (alterations in original)).  The Government can demonstrate intent through "(1) the sealing order itself; (2) extrinsic evidence, such as transcripts and papers filed with the sealing court, casting light on the factors that motivated the court to impose the seal; (3) sealing orders of the same court in similar cases that explain the purpose for the imposition of the seals; or (4) the court's general rules or procedures governing the imposition of seals."  *Morgan*, 923 F.2d at 198 (footnote omitted).

---

[8] The Government does not assert that these documents contain materials covered under the Pen Register Statute (18 U.S.C. § 3123(d)) or Title III (18 U.S.C. § 2518(8)(b)).

United States District Court
Northern District of California

United States District Court
Northern District of California

1       Having reviewed the sealing order itself,[9] the Court finds that there is no evidence that it

2  was intended to operate as the functional equivalent of an injunction.  The sealing order was

3  originally a proposed order submitted by the Government and adopted and signed by the court.  It

4  provides that the document is kept under seal until the Government notifies the court that it is

5  appropriate to unseal the documents.  Accordingly, the Government's assertion that the court

6  intended the documents to remain sealed is inconsistent with the Order that for all intents and

7  purposes allows the Government to decide when to unseal those documents.

8       Additionally, as the Government admits that the investigation related to these materials has

9  concluded, the common law right of access applies.  *See United States v. Bus. of Custer Battlefield*

10  *Museum & Store Located at Interstate 90, Exit 514, S. of Billings, Mont.*, 658 F.3d 1188, 1194

11  (9th Cir. 2011) (holding that "the public has a qualified common law right of access to warrant

12  materials after an investigation has been terminated.").  "When the common law right of access

13  applies to the type of document at issue in a particular case, a 'strong presumption in favor of

14  access' is the starting point" and the party seeking to restrict access to the document "bears the

15  burden of overcoming this strong presumption by . . . 'articulat[ing] compelling reasons' . . . that

16  outweigh the general history of access and the public policies favoring disclosure."  *Id.* at 1194-95

17  (citations and internal marks omitted).  The Government has not argued that any such compelling

18  reasons exist as to why maintaining the secrecy of these documents outweighs the public policy

19  favoring disclosure.

20       However, the Government has raised concerns that these documents "contain the names

21  and other personal information about the subjects, as well as personal information about the

22  prosecutor and agent and a third party/witness victim."  Third Sprung Decl. ¶ 6.  As such, the DOJ

23  asserts that the documents are properly withheld under Exemption 6 and Exemption 7(C).  *Id.*

24       Exemption 7(C) permits withholding of "records or information compiled for law

25  enforcement purposes" to the extent that their production "could reasonably be expected to

26  constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  Such

27

28  [9] The Court reviewed only the sealing order, not any of the related documents.

information is protected from disclosure unless "the public interests in disclosing the *particular* information requested outweigh those privacy interests." *Yonemoto*, 686 F.3d at 694 (emphasis in original). Exemption 6 is similar but distinct from Exemption 7(C); specifically, Exemption 6 provides that an agency may withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6); *see Yonemoto*, 686 F.3d at 693 n.7. The Court is thus required "to protect, in the proper degree, the personal privacy of citizens against the uncontrolled release of information." *Lane v. Dep't of the Interior*, 523 F.3d 1128, 1137 (9th Cir. 2008). The Court must "balance the public interest in disclosure against the [privacy] interest Congress intended the Exemption to protect." *Reporters Comm.*, 489 U.S. at 776; *Forest Servs. Emps. for Envtl. Ethics v. U.S. Forest Serv.*, 524 F.3d 1021, 1025 n.2 (9th Cir. 2008).

The Government's arguments do not support that Exemption 6 or 7(C) should be used to withhold these documents in their entirety. Rather, the more appropriate solution under these Exemptions is to disclose the documents and redact the personal information of the persons described in those documents. Accordingly, the Government will produce the documents at CRM-Lye-39451-39484, redacted in accordance with this Order.

//
//
//
//
//
//
//
//
//
//
//
//

United States District Court
Northern District of California

26

United States District Court
Northern District of California

**CONCLUSION**

Based on the analysis above, the DOJ's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART** and the ACLU's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.  The Government properly withheld under Exemption 5 the following documents: (1) EOUSA Docs. #3 and #4; (2) Criminal Division internal memoranda, CRM-Lye-2948; CRM-Lye-9853-9897; CRM-Lye-34065-34066; CRM-Lye-15311-15316; CRM-Lye-19179-19184; and (3) Criminal Division templates, CRM-Lye-9002-9010; CRM-Lye-9011-9019; CRM-Lye-00015173-00015181; CRM-Lye-00015200-00015207; CRM-Lye-00031754-00031777; CRM-Lye-00038268-00038270.  However, the Government must produce CRM-Lye-39451-39484 (sealing order, warrant, and application); CRM-Lye-2541 (USA Book); CRM-Lye-3818-3825, CRM-Lye-23249-23256, CRM-Lye-33358-33365, and CRM-Lye-28119-28126 (internal memoranda).  The Government must also file a declaration by June 24, 2015, indicating which portion of CRM-Lye-17543-17544 (email) is non-public and presently withheld.

**IT IS SO ORDERED.**

Dated: June 17, 2015

_____
MARIA-ELENA JAMES
United States Magistrate Judge

27