UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF NORTHERN CALIFORNIA,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>DEPARTMENT OF JUSTICE,<br><br>　　　　　　Defendant. | Case No. 13-cv-03127-MEJ<br><br>**ORDER RE: MOTIONS FOR SUMMARY JUDGMENT AND CRM-LYE-17543-17544; ORDER RE: REQUEST FOR CLARIFICATION**<br><br>Re: Dkt. Nos. 35, 36, 54, 55 |

## INTRODUCTION

Plaintiff American Civil Liberties Union (the "ACLU") filed this lawsuit under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking to compel the release of records concerning the Federal Government's use of mobile tracking technology known as a cell site simulator or "CSS." Compl. ¶ 1, Dkt. No. 1. On June 17, 2015, the Court issued an Order on the parties' cross-motions for summary judgment,[1] ruling on all but one of the withheld documents, CRM-Lye-17543-17544, an email that, according to the Government, contains both public and non-public text. *See* Dkt. No. 53 ("Order") at 22. In its Order, the Court requested a declaration from the Government indicating which portion of CRM-Lye-17543-17544 is non-public and presently withheld. *Id.* Having received the Government's response (Fourth Sprung Decl., Dkt. No. 54), the Court **GRANTS** the ACLU's Motion and **DENIES** the Government's Motion with respect to CRM-Lye-17543-17544 for the reasons set forth below.

The parties have also recently brought to the Court's attention that its June 17 Order did not appear to address all of the disputed documents. *See* Jt. Clarification Stmnt., Dkt. No. 55. The

---
[1] *See* Dkt. Nos. 35 ("Gov. Mot."); 36 ("Pl. Mot.").

1  documents about which the parties request clarification are all Criminal Division "Templates" as
2  referred to in Peter Sprung's Third Declaration, Paragraph 8, Dkt. No. 47.  The Court has
3  reviewed the parties' joint statement, and while the Court considered all the Templates discussed
4  therein, the Court's June 17 Order inadvertently left out the Templates' identification numbers.
5  Accordingly, below, the Court clarifies its previous Order with respect to those documents.
6  Additionally, the Court has thoroughly re-examined those Templates with the supporting
7  materials, and while the Court's conclusions as to those documents largely remain the same, the
8  Court has slightly modified its findings for some of the Templates, as described below.  The
9  Conclusion of this Order contains the complete list of documents that the Government may
10 withhold and the documents that it must produce.

## BACKGROUND

A full background can be found in the Court's June 17 Order on the parties' cross-motions for summary judgment.  *See* Order at 1-5.

## LEGAL STANDARD

In considering the Government's claimed FOIA exemptions with respect to CRM-Lye-17543-17544 and the above-mentioned Templates, the Court applies the same legal standard contained in its June 17 Order on the parties' motions for summary judgment.  *See* Order at 5-7.

## DISCUSSION

A.   **CRM-Lye-17543-17544**

The Government argues that it properly withheld CRM-Lye-17543-17544, which it describes as "an email message dated August 22, 2012 from an ESU attorney to another Criminal Division attorney containing the Criminal Division's legal advice on how law enforcement may use its own equipment to obtain location information for a particular wireless device."  Third Sprung Decl. ¶ 15.  "The email describes the technology, what type of legal process is necessary, and what type of information the device can gather."  *Id.*  The *Vaughn* Index describes this document as "**EMAIL.** ***Subject:*** N/A ***Re:*** Attached description and guidance on how cell site simulators and related technologies are utilized and implemented by law enforcement."  *Vaughn* Index at 134, Dkt. No. 35-7 (emphasis in original).  The Government withheld the email under the

2

attorney work product, the deliberative process, and the attorney-client privileges of Exemption 5, as well as Exemptions 6 and 7(C). Third Sprung Decl. ¶ 15. It also acknowledges, however, that the document "excerpts text of a document in the public domain, which has been released to Plaintiff." *Id.*

The Court reviewed the document *in camera*, however, as it was not evident which portion of the document the Government had withheld, the Court ordered the Government to "file a declaration . . . indicating which portion of the document is non-public and presently withheld." Order at 22. The Government timely responded, filing the Fourth Declaration of Peter C. Sprung. Dkt. No. 54. Mr. Sprung's latest declaration attaches as Exhibit A a copy of the portion of CRM-Lye-17543-17544 containing the text that is public and not withheld. *Id.* ¶ 2 & Ex. A.

The Court now considers whether the Government properly withheld the non-public portions of CRM-Lye-17543-17544 under its claimed Exemptions.

1. Exemption 5

FOIA Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This provision essentially grants an agency the same power to withhold documents as it would have in the civil discovery context. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975).

   a. *Attorney Work Product*

Attorney work product protects "against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation" as well as "documents prepared in anticipation of litigation." Fed. R. Civ. P. 26(b)(3). The purpose of this protection is to "protect[] the attorney's thought processes and legal recommendations from the prying eyes of his or her opponent." *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1301 (Fed. Cir. 2006) (quotation and internal marks omitted), *cert. denied sub nom. TiVo, Inc. v. EchoStar Commc'ns Corp.*, 549 U.S. 1096 (2006); *see also Hickman v. Taylor*, 329 U.S. 495, 508 (1947). As the Court noted in its previous Order, "the primary concern in determining whether a document is protected as work product . . . [is] whether it was created in anticipation of litigation

3

in the way the work-product doctrine demands, i.e., by risking revealing mental impressions, conclusions, opinions, or legal theories of an agency attorney, relevant to any specific, ongoing, or prospective case or cases." Order at 11; *see also id.* at 10 (citing *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 926 F. Supp. 2d 121, 143 (D.D.C. 2013) ("While the memorandum may be, in a literal sense, 'in anticipation of litigation'—it simply does not anticipate litigation in the way the work-product doctrine demands, as there is no indication that the document includes the mental impressions, conclusions, opinions, or legal theories of . . . any [] agency attorney, relevant to any specific, ongoing or prospective case or cases.")).

The Ninth Circuit has articulated a test for assessing whether a document qualifies as work product, stating that to "[t]o qualify for work-product protection, documents must: (1) be 'prepared in anticipation of litigation or for trial' and (2) be prepared 'by or for another party or by or for that other party's representative." *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011) (quoting *In re Grand Jury Subpoena, Mark Torf/Torf Envtl. Mgmt. (Torf)*, 357 F.3d 900, 907 (9th Cir. 2004)). *Torf* further elaborates that:

> [t]he "because of" standard does not consider whether litigation was a primary or secondary motive behind the creation of a document. Rather, it considers the totality of the circumstances and affords protection when it can fairly be said that the "document was created because of anticipated litigation, and *would not have been created in substantially similar form but for the prospect of that litigation* [.]"

*Id.* at 908 (quotation omitted; emphasis added). In concluding that the privilege applied on *Torf*'s facts, the Ninth Circuit stated that "[t]he documents are entitled to work product protection because, taking into account the facts surrounding their creation, their litigation purpose *so permeates any non-litigation purpose that the two purposes cannot be discretely separated* from the factual nexus as a whole." *Id.* at 910 (emphasis added); *see also City & Cty. of Honolulu v. U.S. EPA*, 2009 WL 855896, at *9 (D. Haw. Mar. 27, 2009) ("Under Ninth Circuit law, the test is whether the attorney would have generated the material 'but for' the prospect of litigation, though it is immaterial whether or when the litigation actually begins."); *Elkins v. D.C.*, 250 F.R.D. 20, 26 (D.D.C. 2008) ("Plaintiffs argue that some documents were not prepared in anticipation of *this*

4

litigation, *i.e.* they were prepared in anticipation of obtaining the search warrant and thus in anticipation of the administrative proceeding. But the doctrine protects documents prepared in anticipation of litigation; it does not have to be for this district court proceeding." (citations omitted; emphasis in original)).

The portion of CRM-Lye-17543-17544 that the Government seeks to withhold does not qualify as attorney work product. It provides only a "description and guidance on how cell site simulators and related technologies are utilized and implemented by law enforcement." *Vaughn* Index at 134. And while it does very briefly describe what type of legal process might be necessary to use the technology at issue, *see* Third Sprung Decl. ¶ 15, the description does not rise to the level of revealing any mental impressions, conclusions, or theories related to a litigation purpose. As such, the Court cannot find that a litigation purpose permeates these documents. *See Torf*, 357 F.3d at 910; *see also* Order at 17. Accordingly, the withheld portion of the document is not protected under the attorney work product protections of FOIA Exemption 5.

    *b. Attorney Client Privilege*

Exemption 5 has also been construed to protect the attorney-client privilege. *See Maricopa Audubon Soc. v. U.S. Forest Serv.*, 108 F.3d 1082, 1084 n.1 (9th Cir. 1997). "The attorney-client privilege protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services," as well as "communications from attorneys to their clients if the communications rest on confidential information obtained from the client." *Tax Analysts v. Internal Revenue Serv.*, 117 F.3d 607, 618 (D.C. Cir. 1997) (citation omitted). The privilege is generally held to apply to the government in civil litigation. *See United States v. John Doe*, 399 F.3d 527, 532 (2d Cir. 2005); *see also United States v. Ferrell*, 2007 WL 2220213, at *2 (W.D. Wash. Aug. 1, 2007) ("The attorney-client privilege protects entities, such as corporations and government agencies, as well as individuals." (citing *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980)). In the FOIA context, the agency is the "client" and the agency's lawyers are the "attorneys" for the purposes of attorney-client privilege. *Coastal States*, 617 F.2d at 863. "[T]he attorney-client privilege thus protects the Government's communications with its attorneys from disclosure." *United States v. Jicarilla Apache Nation*,

5

131 S. Ct. 2313, 2331 (2011) (Ginsburg, J., concurring).

The attorney-client privilege only protects communications between a client and a lawyer for the purpose of obtaining legal advice. *See United States v. Martin*, 278 F.3d 988, 1000 (9th Cir. 2002). The attorney-client privilege protects communications between a client and an attorney from disclosure: "(1) [w]here legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) unless the protection be waived." *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010) (quoting *Martin*, 278 F.3d at 999); *see also United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1069 (N.D. Cal. 2002) ("At the outset, we note that the privilege protects *communications*, not underlying evidence." (emphasis in original)).

CRM-Lye-17543-17544 qualifies as a communication, and the Government's supporting declaration indicates that it was sent from an ESU attorney to another Criminal Division attorney.[2] Third Sprung Decl. ¶ 15. However, as the ACLU argues, the attorney-client privilege does not apply to all communications between attorney and client. Pl. Mot. at 19 (citing *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996)). And the Government bears the burden of proving its claimed exemption applies. *United States Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) ("the strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents." (citations omitted)).

While the Government states that this email contains the "Criminal Division's legal advice on how law enforcement may use its own equipment to obtain location information for a particular wireless device[,]" Third Sprung Decl. ¶ 15, it is not clear how this document qualifies as legal advice. The email appears to merely contain two excerpts from other documents, without any indication about why the author of the email compiled the excerpts together and for what purpose. Neither the Court's *in camera* review nor the Government's supporting declarations demonstrate that this email was communicated between lawyer and client or that it contains legal advice. *See*

---

[2] Nothing in the document itself conclusively indicates that the email's sender and recipient are attorneys.

*Riverkeeper v. U.S. Army Corps of Eng'rs*, 2014 WL 4049797, at *8 (D. Or. Aug. 14, 2014) (government failed to meet its burden to establish the essential elements of the attorney-client privilege where the court's "*in camera* review of the documents uncover[ed] no suggestion that either of the documents were communicated in connection with any express or clearly implied request for legal advice"); *Elec. Frontier Found. v. Cent. Intelligence Agency*, 2013 WL 5443048, at *16 (N.D. Cal. Sept. 30, 2013) ("The FBI's *Vaughn* index lacks the specificity required for the Court to assess whether the withheld information is exempt from disclosure under the attorney-client privilege. The document descriptions in the FBI's *Vaughn* index do not identify how a lawyer is involved or identify how the document contains legal advice."). Without more, the Court cannot find this document is protected under the attorney-client privilege of Exemption 5.

      *c.*  *Deliberative Process Privilege*

  In its final argument under Exemption 5, the Government invokes the "deliberative process" privilege, "which shields certain intra-agency communications from disclosure to 'allow agencies freely to explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny.'" *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 979-80 (9th Cir. 2009) (quoting *Assembly of State of Cal. v. U.S. Dep't of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992)). "To fall within this privilege, a document must be both 'predecisional' and 'deliberative.'" *Id.* (internal quotes and citation omitted). A "predecisional" document is one prepared in order to assist an agency decisionmaker in arriving at his decision, and may include recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency. *Id.* A predecisional document is "deliberative" if "the disclosure of the materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Id.* at 982 (quoting *Assembly of Cal.*, 968 F.2d at 921).

  The Government has not established that anything within or about CRM-Lye-17543-17544 is either predecisional or deliberative so as to make it subject to the deliberative process privilege. While arguably the email could be predecisional in the sense it gives the recipient more

1  information about the technology at issue and suggests what type of legal process might be needed
2  to use this technology, nothing about the Government's supporting declarations or *Vaughn* Index
3  suggests that disclosure of the information contained in this document would threaten the
4  Government's ability to "freely to explore possibilities, engage in internal debates, or play devil's
5  advocate without fear of public scrutiny."  *See Lahr*, 569 F.3d at 979-80.  Without more, the Court
6  cannot find that the Government properly withheld the email pursuant to the deliberative process
7  privilege.

    *d.*  Summary

  The Court finds no grounds for withholding the non-public portion of CRM-Lye-17543-17544 pursuant to Exemption 5's attorney work product protections or the attorney-client or deliberative process privileges.  The Court now turns to the Government's arguments under Exemptions 6 and 7(C).  *See* Third Sprung Decl. ¶ 15.

  2.  Exemptions 6 and 7(C)

  Exemption 7(C) permits withholding of "records or information compiled for law enforcement purposes" to the extent that their production "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  Such information is protected from disclosure unless "the public interests in disclosing the *particular* information requested outweigh those privacy interests."  *Yonemoto v. Dep't of Veterans Affairs*, 686 F.3d 681, 694 (9th Cir. 2012) (emphasis in original).  Exemption 6 is similar but distinct from Exemption 7(C); specifically, Exemption 6 provides that an agency may withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6); *see Yonemoto*, 686 F.3d at 693 n.7.  The Court is thus required "to protect, in the proper degree, the personal privacy of citizens against the uncontrolled release of information[.]"  *Lane v. Dep't of the Interior*, 523 F.3d 1128, 1137 (9th Cir. 2008) (quotation omitted)).  The Court must "balance the public interest in disclosure against the [privacy] interest Congress intended the Exemption to protect."  *U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 776 (1989); *see also Forest Servs. Emps. for Envtl. Ethics v. U.S. Forest Serv.*, 524 F.3d 1021, 1025 n.2 (9th Cir. 2008).

CRM-Lye-17543-17544 contains the names of Department of Justice employees, their email addresses, and the phone numbers associated with these persons and other agencies. Exemption 6 or 7(C) might support protection of this information, but the Government has not shown why these Exemptions require withholding the other portions of this document. The Court finds that the more appropriate solution under these Exemptions is to disclose the withheld portions of the document but redact the personal information of the persons described above, including the names of the employees, the email addresses, and the telephone numbers contained in the email. Accordingly, the Government shall produce CRM-Lye-17543-17544, redacted in accordance with this Order.

## B.     The "Form" Templates

In its June 17 Order, the Court held that the Criminal Division Templates identified in Peter Sprung's Third Declaration, Paragraph 8, were properly withheld under Exemption 5 as attorney work product. *See* Order at 14-15. However, the Court did not include the precise document numbers identified in Paragraph 8, leading to the parties' request for clarification. The Court has re-examined the documents about which the parties request clarification, including reviewing Mr. Sprung's Declarations and the *Vaughn* Index descriptions. Following this review, the Court largely maintains its earlier position that the documents identified in Paragraph 8 of Peter Sprung's Third Declaration may be withheld.

Nonetheless, upon re-examination of those documents, the Court finds it necessary to reconsider part of its prior Order,[3] specifically for documents CRM-Lye-23323-23328; CRM-Lye-23540-23545; CRM-Lye-29151-29156; CRM-Lye-30666-30671; CRM-Lye-31502-31507; and CRM-Lye-37914-37919. These documents have the following *Vaughn* Index description:

> **GO-BY.** *Title:* Untitled. *Subject Matter:* Provides a form designed for the purpose of identifying an unknown phone – that is, a phone who identifying attributes are not known – being used/carried by a known individual.

---

[3] *See Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 614 (C.D. Cal. 2013) (a "district court is authorized to reconsider its decisions pursuant to both the Federal Rules of Civil Procedure and its inherent powers."); *see also* Fed. R. Civ. P. 54(b) (unless certified as a final judgment by the district court, "any order or other decision, however designated, that adjudicates fewer than all the claims" of all of the parties "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.").

*See Vaughn* Index at 176-77, 231, 244, 257, 330.  The Government withheld these "Forms" under Exemption 5 as protected as attorney work product and under Exemption 7(E) as records or information compiled for law enforcement purposes.  *See id.* (all); Third Sprung Decl. ¶ 8.[4]

While in the June 17 Order the Court found Mr. Sprung's description of the templates including applications, agent affidavits, memorandums of law, and proposed orders sufficiently supported the argument that those documents in Paragraph 8 were prepared in anticipation of litigation (*see* Order at 14-15), the same cannot be said of these Forms.  There is no indication in Mr. Sprung's Declarations or in the *Vaughn* Index descriptions that the Forms were prepared in anticipation of litigation or that a litigation purpose so permeates any non-litigation purpose such that the two purposes cannot be separated.  *See Torf*, 357 F.3d at 910.  The Government has not provided any support for how these Forms convey its attorneys' litigation strategy or otherwise risk exposing the attorneys' thought processes and legal impressions.  Finally, while the Court had the opportunity to review *in camera* many of the documents identified in Peter Sprung's Third Declaration, the Government did not provide a copy of any of the Forms described above, and thus, the Court does not have the benefit of that review.  Accordingly, the Court finds that the Government has not adequately supported its withholding of these Forms under Exemption 5.

The Government also asserts Exemption 7(E) to withhold the Forms, arguing that they qualify as records or information compiled for law enforcement purposes.  Third Sprung Decl. ¶ 8.  But the Government has not provided adequate support for this assertion either.  To support an Exemption 7(E) withholding, "the government must show, by evidence admissible on summary judgment, that release of the withheld information 'would reasonably be expected to risk circumvention of the law.'"  *Elec. Frontier Found. v. Dep't of Defense*, 2012 WL 4364532, at *3 (N.D. Cal., Sep. 24, 2012) (quoting 5 U.S.C. § 552(b)(7)(E));  *see also Am. Civil Liberties Union v. FBI*, 2014 WL 4629110, at *11 (N.D. Cal. Sept. 16, 2014) ("Exemption 7(E) requires that the agency demonstrate logically how the release of the requested information might create a risk of circumvention of the law." (citing *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir.

---

[4] The Government previously asserted that the Templates were protected by the deliberative process privilege, but the Government has withdrawn its claim to that privilege as to these documents.  *See* Third Sprung Decl. at 4 n.1; *see also* Dkt. No. 46 at 1-14.

United States District Court
Northern District of California

2009)). Furthermore, "Exemption 7(E) only exempts investigative techniques not generally known to the public." *Rosenfeld v. Dep't of Justice*, 57 F.3d 803, 815 (9th Cir. 1995).

The description of the Forms in the Government's *Vaughn* Index provides little explanation as to how the disclosure of any of the documents above "could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Further, there is no indication that these forms expose "a technical analysis of the techniques and procedures used to conduct law enforcement investigations." *Bowen v. U.S. Food & Drug Admin.*, 925 F.2d 1225, 1228-29 (9th Cir. 1991). Nor is there any support for the Government's contention that the information contained in these Forms is not generally known to the public. *See Rosenfeld*, 57 F.3d at 815; *see also* Order at 18-22. Accordingly, the Court does not find support for withholding the Forms identified above under Exemption 7(E).

As neither of the Government's claimed Exemptions support its withholding of the Forms, the Court orders that the Government produce these documents to Plaintiff. However, the other documents identified in Paragraph 8 of Peter Sprung's Third Declaration continue to be properly withheld under Exemption 5 as attorney work product. *See* Order at 14-15.

## CONCLUSION

Based on the analysis above, the ACLU's Motion for Summary Judgment is **GRANTED** and the Government's Motion is **DENIED** with respect to the email at CRM-Lye-17543-17544 and the Forms in the Criminal Division Templates at CRM-Lye-23323-23328; CRM-Lye-23540-23545; CRM-Lye-29151-29156; CRM-Lye-30666-30671; CRM-Lye-31502-31507; and CRM-Lye-37914-37919.

Additionally, for clarification, the Court provides the full list of the documents that the Government has properly withheld and that the Government must produce:

The Government properly withheld the following documents: (1) EOUSA Docs. #3 and #4; (2) Criminal Division internal memoranda at CRM-Lye-2948; CRM-Lye-9853-9897; CRM-Lye-34065-34066; CRM-Lye-15311-15316; CRM-Lye-19179-19184; and (3) Criminal Division Templates at CRM-Lye-2247-2273; CRM-Lye-2496-2502; CRM-Lye-5015-5026; CRM-Lye-8208-8258; CRM-Lye-8985-9019; CRM-Lye-15173-15207; CRM-Lye-17535-17539; CRM-Lye-

31751-31777; CRM-Lye-32411-32446; CRM-Lye-33647-33649; CRM-Lye-34320-34323; CRM-Lye-36773-36778; CRM-Lye-36994-36995; CRM-Lye-37001-37004; CRM-Lye-37926-37928; CRM-Lye-37946-37948; CRM-Lye-37950-37963; CRM-Lye-38123-38125; CRM-Lye-38128-38130; CRM-Lye-38268-38281; CRM-Lye-38285-38287; CRM-Lye-38455-38463; CRM-Lye-38541-38549; CRM-Lye-38576-38593; CRM-Lye-38595-38611; CRM-Lye-38721-38756; CRM-Lye-38820-38836; CRM-Lye-38876-38880; CRM-Lye-39042-39059; CRM-Lye-39486-39493; and CRM-Lye-39508-39525.

However, the Government must produce the following documents: (1) the Forms in the Criminal Division Templates at CRM-Lye-23323-23328; CRM-Lye-23540-23545; CRM-Lye-29151-29156; CRM-Lye-30666-30671; CRM-Lye-31502-31507; and CRM-Lye-37914-37919; (2) the sealing order, warrant, and application at CRM-Lye-39451-39484; (3) the USA Book page, CRM-Lye-2541; (4) internal memoranda at CRM-Lye-3818-3825; CRM-Lye-23249-23256; CRM-Lye-33358-33365; and CRM-Lye-28119-28126; and (5) the email at CRM-Lye-17543-17544. CRM-Lye-39451-39484 and CRM-Lye-17543-17544 are subject to redaction in accordance with this Order and the June 17 Order. *See* Order at 26.

Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

Dated: July 13, 2015

_____
MARIA-ELENA JAMES
United States Magistrate Judge